In re NATIONAL PARAGON CORPORATION a/k/a Paragon Needlecraft, Debtor.

**Bankruptcy No. 85–04645K.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 10, 1987.

See also, 68 B.R. 337, 74 B.R. 180.

Erwin L. Pincus, Philadelphia, Pa., for debtor.

Marvin Krasny, Philadelphia, Pa., for creditors' Comm.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Before us in the above-captioned case, which served as the backdrop of one of our initial decisions concerning compensation awards, reported at 68 B.R. 337 (Bankr.E.D.Pa.1986), is another Motion for reconsideration of a later award, in which the Movant asks us to reassess our positions in this area, particularly our reluctance to award sums for the costs of xeroxing, postage, and long distance telephone calls in all but extraordinary situations. We accept the Movant's invitation to reassess our position, and we take cognizance of the Movant's Brief in this matter, the Appellate Brief of another firm which appealed our Order in the companion case to our earlier *National Paragon* decision, and the Opinion of our brother, the Honorable Bruce Fox, in *In re Paolino.* 71 B.R. 576, 582–895 (Bankr.E.D.Pa.1987), wherein, in his typically well-reasoned manner, Judge Fox differs from our conclusion and holds that such xeroxing, postage, and telephone costs, if properly documented, will generally be allowed by him. Although our respect for the Movant and most of the members of the bar who have come before us in the past five months and argued that we assess our positions since our initial decisions were published makes our position that much more difficult to sustain, as we thoroughly dislike the role of "nay-sayer," we cannot, in good conscience, conclude that our original positions were incorrect. We therefore are compelled to reaffirm most of our earlier positions. However, we do clarify our position on allowance for intra-office conference time, indicating that we will compensate such time only once for all of the conferees, measuring the rate at the average conferees' normal rate.[1] Applying this formula results in an increment of $1,493.26 in additional compensation to the Movant here. In addition, in this case, we find that we erred in denying compensation for one significant block of services performed by the Movant in our initial reductions to the fee requested, resulting in an adjustment of $10,218.50 in additional compensation to the Movant. We therefore shall allow the Movant additional compensation of $11,711.76.

Our starting point is the September 2, 1986, Order which we entered in this case for services rendered by the law firm of Pincus, Verlin, Hahn, and Reich (referred to herein as "the Movant") as Counsel for the Debtor between October, 1985, and June, 1986, in which we awarded $86,297.10 for legal services and $1,423.30 for costs in response to a request of $97,217.50 for legal services, after deduction of a $45,000.00 retainer, and costs of $6,370.04. In our previously-reported Opinion of December 23, 1986, we denied a Motion of the Movant for Reconsideration of the September 2, 1986, Order, filed on September 10, 1986, combining with this a decision on a similar Motion for Reconsideration filed by the firm of Adelman Lavine Krasny Gold and Levin (hereinafter referred to as "the Adelman firm") in a totally separate case, *In re Donut Shops Management Corp.,* Case No. 85–05328K. We noted that, but for our mistaking a cost item for xeroxing as one for printing due to the Movant's inadequate description of the items, we would have awarded it costs of only $391.10 in our Order of September 2, 1986. *See* 68 B.R. 337, 343.

On November 14, 1986, the Movant filed a new Application seeking compensation of $88,177.40 and costs of $6,602.01 for the period from July 1, 1986, through September 16, 1986. However, re-attached thereto was, in addition, all of the time records and

---

1. By way of example, if two lawyers, with average rates of $150.00 and $125.00 confer for one hour, we will compensate the applicant with one hour at $137.50 per hour. If three lawyers, with average rates of $175.00, $125.00, and $100.00, respectively, confer for one hour, we will compensate the applicant with one hour at $133.33 per hour.

costs requests submitted with the earlier Application. In the form of a Motion for Re-Reconsideration, the Movant specifically requested that we award it $101,077.70, the sum of the request for legal services from July through September and the sum of both costs requests.

On February 17, 1987, we entered an Order granting the Movant compensation in the total sum of $63,096.50, denying all costs, since the new request for costs was solely for photocopying, postage, travel costs and allowances in connection with travel by one associate to New York, and one entry for lexis research.

On February 25, 1987, the Movant filed the instant Motion for Reconsideration of our February 17, 1987, Order. On April 23, 1987, the Movant submitted argument and brief testimony from Erwin L. Pincus, Esquire, the senior partner of the Movant; William Campbell, the Debtor's Vice-President; and Jonathan H. Ganz, Esquire, a junior partner of the Movant. After hearing the argument that we erred in deducting all of the time spent itemized for performance of services in connection with Media Arts International, Inc., a subsidy of the Debtor which eventually also filed a Chapter 11 case, which has been assigned to Judge Fox as Case No. 86–05716F, we agreed with this argument. We originally believed that these requests would more appropriately form a part of the request for compensation in the *Media Arts* case, but we are now convinced that all of these services were performed before the *Media Arts* bankruptcy was filed and hence that they were more appropriately requested here. Although a good portion of the time expended on *Media Arts* consisted of intra-office conferences which we would not compensate fully in any event, we have determined that $10,218.50 of the time expended on matters concerned *Media Arts,* exclusive of intra-office conference time, should have been compensated. We are therefore granting the Motion to that extent.

The testimony addressed other issues. Mr. Pincus, an eminently affable and capable practitioner with forty years' experi-

ence, supported his hourly rate of $250.00 per hour and stated that, although this case presented several difficult problems, he considered it a total success because the Plan contemplated a one hundred (100%) percent payment to all creditors. Mr. Campbell indicated his complete satisfaction with the services rendered. Mr. Ganz, a law clerk to former Chief Judge Emil F. Goldhaber of this Court in the late 1970's who had become a partner of the Movant in 1984, emphasized his belief that all of the cost items requested were not overhead.

The Movant requested an opportunity to submit a Brief in support of its Motion, which, after several extensions, was filed on May 14, 1987. We have carefully reviewed the authorities which are cited therein, as well as the District Court Appellate Brief filed by the Adelman firm in *Donut Shops Management,* and the Opinion of Judge Fox in *Paolino.* While we are prepared to refine some of our previous statements relating to our standards in ruling upon fee applications, particularly in the area of intra-office conferences, we remain convinced that there is such a wide divurgence on the costs issue that the exercise of our discretion to deny these items, which we addressed in *National Paragon,* is perfectly proper, at least until we receive further guidance from the District court or, hopefully, from the Court of Appeals. We also emphasize that Judge Fox's position is, in our view, proper and supportable as an exercise of discretion also, even though it differs from ours.

We begin by quoting from the pertinent statutory provision, 11 U.S.C. § 330(a), which states as follows:

Sec. 330. Compensation of officers.

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional

person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

The Movant's Brief makes essentially three points, in addition to its correct assertion that we should reconsider the excise of the time spent on work for *Media Arts:* (1) We have overlooked the fact that Congress has abandoned the "notions of economy" concept in review of the fee applications, citing *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir.1985); *In re McCombs*, 751 F.2d 286 (8th Cir.1984); and *In re Atlas Automation, Inc.*, 27 B.R. 820 (Bankr.E.D. Mich.1983); (2) The court should grant the Movant a premium due to its success, citing principally *In re Penn-Dixie Industries, Inc.*, 18 B.R. 834 (Bankr.S.D.N.Y. 1982); and *In re Garland Corp.*, 8 B.R. 826 (Bankr.D.Mass.1982); and (3) We should award it the items of cost denied in our previous *National Paragon* opinion, citing *In re S.T.N. Enterprises*, 70 B.R. 823 (Bankr.D.Vt.1987).

The Adelman District Court Brief and the *Paolino* opinion relate only to the third point, although both rely on the first point as the common starting point of their respective arguments. The principal argument added by the Adelman Brief is that, in light of the present and previous practices of other judges of this court, it is not "reasonable" for this court to exclude such costs.[2] As we might anticipate, the reasoning of Judge Fox in *Paolino* is very careful and thorough. His principal additional arguments, in the midst of a veritable annotation of relevant authorities, are as follows: (1) Section 330(a)(2) specifically allows "expenses" to counsel, which must contemplate something more than the elements of "costs," per 28 U.S.C. § 1920, which are, in his view, pretty much all that we, in *National Paragon*, indicated that we would allow as "expenses;" and (2) Bankruptcy cases are more like "fund in court" cases as opposed to "statutory fee" cases, and it is appropriate to be more liberal in awarding costs in such cases, as opposed to statutory fee cases.

■ Our views on the costs question are as follows. First, we acknowledge the Congressional mandate that bankruptcy courts should not be guided by notions of economy which are not followed in other fee-application Motions. We therefore agree that our standards should be the

---

**2.** There are two relatively minor statements in this Brief which, while they are not of great significance, we feel compelled to address. First the Adelman firm complains that we prejudiced its Motion to reconsider disallowance of costs by considering it along with that of the less detailed application seeking costs of the Movant in *National Paragon*. It was, however, our intention, as in this Opinion, to carefully consider submissions from a number of sources before establishing our own principles for evaluating fee requests. We considered it eminently fairer to have decided this issue where it was presented in the best possible light by the Adelman firm as well as in the slightly less impressive, but still highly competent, manner that the Movant presented it.

Secondly, the Adelman firm appears to feel that this Court was crediting a public criticism of "cronyism" between bankruptcy judges and the bankruptcy bar, as applied to the Movant, but not to it. We wish to clearly indicate that neither the passage in *National Paragon*, 68 B.R. at 341, nor the similar passage addressing this subject in *In re Beck-Rumbaugh Associates*, 68 B.R. 882, 888–89 (Bankr.E.D.Pa.1987), was meant to accuse any present or past attorney or judge of this court of "cronyism." We merely acknowledged the potential *appearance* of this phenomenon and our efforts to avoid even such an appearance in order to insure public confidence in the justice of our fee awards.

It would also be unfair to imply that public criticism of fee awards levelled by creditors who must often wait until the end of long cases to often get what little they ultimately receive, while attorneys receive what appear to such creditors to be liberal fee awards on an interim basis, is more apt to be levelled at the Movant firm than the Adelman firm. Creditors in many bankruptcies express anger at such developments. Furthermore, the fact that the *National Paragon* bankruptcy will result in a one hundred (100%) percent pay-out to creditors is one of the reasons that the Movant seeks a greater dividend of fees, and we would anticipate that creditor dissatisfaction would be at a minimum in this case.

same as those which are applied by the district court in non-bankruptcy cases, and we believe that this notion indicates that we should not award less. It does not, however, indicate that we should award more.

■ We do, however, believe that the principles controlling "fund in court" and "statutory fee" cases must be differentiated. This is one of the principle themes of Report of The Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 250–51 (1985). We also reiterate our conclusion in *In re Shaffer-Gordon Associates, Inc.*, 68 B.R. 344, 349–50 (Bankr.E.D. Pa.1986), and mirrored by Judge Fox's statements in *Paolino*, 71 B.R. at 584, that bankruptcy cases are far more akin to "fund in court" cases than "statutory fee" cases. Hence, neither we nor Judge Fox agree with the underlying premise of the *Nucorp Energy* court that bankruptcy cases are unlike "fund in court" cases and "unique." 764 F.2d at 662.

We therefore believe that the most reliable source of authority is to examine how district judges and the Third Circuit Court of Appeals have treated such cost items in "fund in court" cases. It is also relevant to consider how those courts have considered such items in "statutory fee" cases because in such cases, "a 'guilty' wrongdoer" rather than an "innocent" estate must bear the costs, *Shaffer-Gorden, supra,* 68 B.R. at 350, and hence we could expect the courts to be more liberal in awarding costs than in bankruptcy cases, which are like "fund-in-court" cases.

This last observation, which seems to us so self-apparent, may be disputed in Judge Fox's *Paolino* decision where it is said that "research reveals that federal courts in the circuit have allowed reimbursement of photocopying and long distance telephone expenses in 'fund-in-court' cases." 71 B.R. at 584. If this passage is meant to suggest that local courts are more likely to award costs in "fund in court" as opposed to "statutory fee" cases, we must respectfully

disagree. If this statement is meant to indicate that *some* courts, in "fund-in-court" cases, have granted such costs, while others have denied them, then we can accept it. We would, however, also point out that, even in "statutory fee" cases, allowances for such items as photocopying, postage, and phone call bills have been allowed by some district judges and denied by others, and different results have been affirmed by the Court of Appeals. See cases cited at page 863 *infra*.

We also doubt whether there is such a clear dichotomy between "costs," as referenced in 28 U.S.C. § 1920, and "expenses," as referenced in 11 U.S.C. § 330(a)(2). Nowhere in § 330(a) is there any statement that "costs" are allowed. Can this mean that "costs," as described in 28 U.S.C. § 1920, are *not* allowable, but that other expenses are? We doubt this. Rather, we believe that "expenses" is basically synonymous with "costs." Nowhere does § 330(a) state that "costs" and "expenses" are *both* allowed, and that would be the only wording which we would be inclined to conclude supports the conclusion that "expenses" in 11 U.S.C. § 330(a)(2) means "something more" than "costs" in 28 U.S.C. § 1920.

Finally, we would observe that some of the items which we regularly allow as "expenses" under 11 U.S.C. § 330(a)(2) would not normally be within the scope of 28 U.S.C. § 1920. For example, many courts have allowed compensation for only those transcripts or depositions actually used at trial. See 28 U.S.C. § 1920(2); Bartell, *Taxation of Costs and Awards of Expenses in Federal Court*, 101 F.R.D. 553, 567–71 (1984). Our tendency is to allow all such expenditures, and to allow notary fees and copying and postage for remittance of documents which were at one time the responsibility of the Clerk's office to dispatch and have been undertaken by counsel to relieve the strain on that office. *See Shaffer-Gordon, supra,* 68 B.R. at 347.[3] Fur-

---

**3.** We find it difficult to understand the statement in the Adelman firm's District Court Brief that, in allowing such expenses, we are being

inconsistent with a purported rule established by us that such costs are never compensable "as a matter of law." Because we totally recognize

thermore, we must note that 28 U.S.C. § 1920 provides that costs be awarded only to successful litigants in adversarial matters. Many bankruptcy proceedings are not truly adversarial. And our tendency is to grant the same expense allowances to all counsel, with success only one factor, among other factors.

With this backdrop, we submit that, in this area, the cases, at the district court level in this court, are hopelessly inconsistent. If we had a clear instruction from the District Court or the Court of Appeals that we should proceed to determine specific items as allowable or not allowable, we would follow it. However, in the mean time, we feel that this is a matter totally vested to our discretion, and that our exercise of this discretion, especially when it is consistent with District Court pronouncements, can scarcely be termed an "abuse" of such discretion. The possibility occurs to us that the Court of Appeals means to allow district courts and our courts such discretion by consciously refusing to set down specific instruction in this area.

We acknowledge the presence of some district court decisions which support the conclusion that some of the items which we have disallowed should be awarded. *See, e.g., In re Fine Paper Antitrust Litigation,* 98 F.R.D. 48, 237 (E.D.Pa.1983) (per McGLYNN, J.); *aff'd in part and rev'd in part,* 751 F.2d 562 (3d Cir.1984) (fund-in-court case); *Zeffiro v. First Pennsylvania Bank, N.A.,* 574 F.Supp. 443, 449 (E.D.Pa. 1983) (per BECHTLE, J.), *aff'd,* 746 F.2d 1469 (3d Cir.1984) (statutory fee case); and other cases cited in *Paolino, supra,* at 583. However, these are offset by cases where such items were disallowed by other dis-

trict court judges. *See, e.g., Vecchione v. Wohlgemuth,* 481 F.Supp. 776, 798–800 (E.D.Pa.1979) (per BECKER, J.); (statutory fee case); and *Wehr v. Burroughs Corp.,* 477 F.Supp. 1012, 1021–22 (E.D.Pa.1979) (per HUYETT, J.), *aff'd in part & rev'd in part,* 619 F.2d 276 (3d Cir.1980) (statutory fee case). *See also In re Penn Central Trans. Co.,* 23 B.R. 499, 508 (E.D.Pa.1982) (per FULLAM, CH. J.) (half of "miscellaneous expenses" requested were awarded in bankruptcy case).[4]

In exercising our discretion, we continue to believe that, irrespective of our great personal respect for the members of Movant's firm, as well as those of the Adelman firm, we must continue to be guided by two principles: (1) Compensation should be disallowed under the Code where it is not specially allowed, irrespective of the equities; and (2) The ultimate decision of what is to be absorbed by firms as overhead and what is compensable must be made by us, not dictated to us by the creative practices of the interested firms which come before us. The first principal is echoed by Judge Fox in *Paolino,* 71 B.R. at 580, and is at the core of decisions in the area of compensation which, to us, seem overly harsh, like *In re Arkansas Co.,* 798 F.2d 645 (3d Cir. 1986) (nunc pro tunc petition not allowed for ordinary negligence). The second principle, the heart of our decision in *Shaffer-Gordon,* is echoed by the decision of the Court of Appeals in *Daggett v. Kimmelman,* 811 F.2d 793, 799–80 (3d Cir.1987).

Turning to the authorities cited in the Movant's Brief, we would be remiss if we failed to note the remarkably detailed Opinion of Judge Conrad who, as the sole bank-

---

the difficulties and differences of opinion in this area, we have never contended that we would be so inflexible as to disallow *any* sort of compensation "as a matter of law." Truly extraordinary circumstances will always be weighed in this area to determine whether we should make exceptions to what we term "guidelines," not "rules of law."

**4.** With respect to the Adelman firm's argument that our decision is inconsistent with past policies of this bankruptcy court, we note that we have located no decisions from either the present or past Chief Judge of our court on this subject. The only decisions appeared to have

emanated from Judge King, who, after writing some of the strongest and clearest decisions disallowing such costs over the first ten years of his tenure, *e.g., In re Bible Deliverance Evangelistic Church,* 39 B.R. 768, 778 (Bankr.E.D.Pa. 1984); and *In re Horn & Hardart Baking Co.,* 30 B.R. 938, 945 (Bankr.E.D.Pa.1983), changed his mind in a decision published in the last year of his tenure. *In re American International Airways, Inc.,* 47 B.R. 716, 724–25 (Bankr.E.D.Pa. 1985). We cannot conclude that this state of affairs clearly establishes any past policies of this court in this area.

ruptcy judge sitting in the District of Vermont, where the caseload is far more modest than ours, has set forth practically a textbook of procedures which he deems, in *his* exercise of discretion, are appropriate for filing fee petitions in his Court in *S.T.N., supra.* We acknowledge that Judge Conrad would allow photocopying costs (at 20¢ per page), travel expenses (when justified, at 21¢ per mile), telephone charges (when accompanied by an explanation of why a letter would not suffice), and postage charges (but generally only at regular rates). 70 B.R. at 843, 844. However, the trade-off is that Judge Conrad makes demands of the specificity of contents of fee applications that we, having much larger caseloads, would admittedly not find time to digest (e.g.; full explanations of the subject matter of all pleadings, details of the contents of all negotiations and correspondence, *id.* at 833; break-downs of telephone calls in no more than three-minute intervals; and detailed description of all telephone calls). *Id.* at 832, 833. It is doubtful that Judge Conrad intended to impose his rulings on other bankruptcy judges; he cites our *Shaffer-Gordon* holding that the court must exercise its own discretion to set rates with approval. *Id.* at 842. In like fashion, we cannot state that Judge Conrad—or Judge Fox—are wrong because they choose to exercise their discretion in a slightly different fashion than we do.

Turning to the other cases cited by the Movant in its Brief, we note that we can hardly believe that the Movant would be satisfied with the results in *McCombs supra* (court affirms award of the munificent sums of $150.00 for fees and $64.10 for expenses to Trustee); and *Atlas Automation, supra* (court establishes hourly rate for experienced local counsel at $90.00 per hour).

■ Two final issues deserve some consideration. First, we reject, as did Judge Fox in *In re J.A. & L.C. Brown Co.,* 71 B.R. 197, 198–99 (Bankr.E.D.Pa.1987), the notions that we should not review at all or review less carefully fee applications in those cases where no objections have been raised to the fees requested and/or counsel has achieved good results for the debtor and/or for creditors. Thus, the fact that the Movant achieved a one hundred (100%) percent payment of creditors and has a satisfied client cannot result in our rubber-stamping the application for the fee requested. However, results are not irrelevant, and we believe that the good results achieved should and has caused us to give the Movant here the benefit of any doubts, as we are doing in awarding the Movant an additional $11,711.76 over our February 17, 1987, award, in the face of our statements that we cannot, do not, and in the past have not, given our huge caseloads, favor Motions to reconsider fee awards. *See In re American International Airways, Inc.,* 69 B.R. 396, 401–02 (Bankr.E.D.Pa.1987); and *National Paragon,* 68 B.R. at 343. We do not intend to retreat from that policy in making a rare exception here. Again, we note that the courts in the cases cited by the Movant, while complimenting the attorneys on their accomplishments as do we the Movant, reduced their fee requests. *See Penn-Dixie, supra,* 18 B.R. at 837, 839; and *Garland Corp.,* 8 B.R. at 834–35.

We acknowledge that the Movant has requested that we adjust its compensation for time expended on behalf of Media Arts in the amount of $17,658.50 instead of $11,711.76, as we shall award: the discrepancy is due to the fact that we have reduced the time expended by members of the Movant in intra-office conferences. If we were considering only the increment for compensable time spent on work for Media Arts, we would only increase the award to the Movant by $10,218.50.

■ On the issue of intra-office conferences, we note that, in many of our Opinions, we have expressed an unwillingness to allow compensation for extensive intra-office conference time, *see American International Airways, supra,* 69 B.R. at 400; *Beck-Rumbaugh, supra,* 68 B.R. at 887–88; and *In re Woerner,* 67 B.R. 685, 687 (Bankr.E.D.Pa.1986). However, we have not articulated our policy very clearly in this area, nor have be been as consistent as we would have liked. Hereinafter, we

express, as a general guideline, a policy of allowing such time at part-time to all participants as explained at page 859 & n. 1 *supra*, with the necessary caveats that we will disallow totally what appears to be excessive time in such conferences and we may, in extremely well-justified, extraordinary situations, allow full compensation to both participants. *Compare In re Wabash Valley Power Ass'n, Inc.*, 69 B.R. 471, 478 (Bankr.S.D.Ind.1987).

Consistent with the foregoing policy, we have recalculated the fees due to the Movant, and have added $1,493.16 to our previous award, which we previously deducted for intra-office conference time. We shall therefore proceed to enter an Order granting the Motion before us in part, and awarding the Movant additional total compensation of $11,711.76.

### ORDER

AND NOW, this 10th day of June, 1987, upon consideration of the Motion of PINCUS, VERLIN, HAHN & REICH (hereinafter referred to as "the Movant") that we reconsider our Order of February 17, 1987, it is hereby

ORDERED that the said Motion is GRANTED in part, and the Movant is hereby allowed the additional sum of $11,711.76 as final compensation for services rendered on behalf of the Debtor for the period up to and including September 16, 1986, the date of Confirmation of the Debtor's Plan of Reorganization, in addition to the amount of $63,096.50 awarded to the Movant in our Order of February 17, 1987.