**In re MOTOR FREIGHT EXPRESS, Debtor.**

**Bankruptcy No. 82–04944S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 20, 1987.

Michael A. Bloom, Philadelphia, Pa., for debtor.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant matter, the Fifth Application of Cohen, Shapiro, Polisher, Shiekman and

Cohen (hereinafter referred to as "the Applicant") for Interim Attorneys' Fees for Professional Services rendered on behalf of the Debtor in Possession, has been remanded for findings or an explanation of the rationale for any disallowances in the amount claimed.

In the instant Application, the Applicant has requested compensation in the amounts of $172,123.50 in attorneys' fee, plus $26,073.00 for time spent in preparation of the fee applications for a total of $198,196.50, as well as $20,956.12 for reimbursement of expenses from January 21, 1984 through December 31, 1986.[1]

A brief Order was entered by this Court on June 17, 1987, awarding the sum of $149,388.00 for attorneys' fees and the sum of $3,503.55 for reimbursement of costs and expenses without elaboration. However, as has been our practice in the past, in reviewing the itemized Exhibits to the Fee Application, we made numerous notations as to disallowances with coded explanations, e.g., "L" for lumping, "D" for duplication, or "½" to indicate the amount allowed and disallowed.[2] Unfortunately, as the District Court observed, the Applicant failed to include the voluminous two-volume binders of exhibits in the designated record for the District Court's review. Thus, the District Court did not have our line-by-line computations of the disallowances made to the Application before it.

In any event, on June 29, 1987, the Applicant filed a Notice of Appeal to our Order of June 17, 1987, which only appealed from that part of the Order which limited the allowance for reimbursement for costs and expenses disbursed between January 21, 1984, through December 31, 1986, to $3,503.55. The Applicant specifically declined to appeal from that portion of the Order awarding or limiting attorneys' fees.

On September 4, 1987, the District Court, per the Honorable John P. Fullam, entered a Memorandum and Order remanding the case to us for findings of fact or further explanation. Consequently, we entered an Order on September 22, 1987, affording the Applicant thirty (30) days in which to resubmit documentation and expenses consistent with our recent Opinion in *Mayflower, supra*. Supplemental documentation was timely filed in the form of three (3) volumes of untold pages, measuring four (4) inches in thickness.

We had originally allowed $3,503.55 for expenses on the following basis:

| Description of Expenses Requested | Amount Requested | Amounts Allowed Per Order of June 17, 1987 |
|---|---|---|
| Document Production | $ 2,036.81 | — |
| Mail Special Handling | 2,084.02 | — |
| Messenger Service | 972.00 | — |
| Photostats | 9,319.52 | — |
| Secretarial Overtime | 195.00 | — |
| Telephone Tolls | 1,380.26 | — |
| Certified Copies | 16.00 | $ 16.00 |
| Good Standing Certificate | 45.00 | — |
| Transcripts | 83.30 | 83.30 |
| Computerized Research | 508.77 | — |
| Notaries | 13.75 | 13.75 |
| Velo Bind | 25.00 | — |

1. The Debtor filed its Chapter 11 Petition on October 14, 1982. In accordance with previous Orders of this Court regarding four separate Applications for interim attorneys' fees and for reimbursement of expenses, the Debtor has paid $807,661.10 to the Applicant excluding a $50,000.00 prepetition retainer.

2. We again note that we do not intend to write out detailed explanations as to disallowances in fee applications, as we believe that the check-marks and notations on each Application along with Exhibits are sufficient explanation of our award. *In re Daulerio*, Bankr. No. 78–1752K, slip op. at 3 (Bankr.E.D.Pa. Nov. 5, 1987); *In re Metro Transportation Co.*, 78 B.R. 416, 417 (Bankr.E.D.Pa.1987); and *In re Mayflower Associates*, 78 B.R. 41, 44 n. 2 (Bankr.E.D.Pa.1987). We are only doing so here in light of Judge Fullam's remand Order.

| Description of Expenses Requested | Amount Requested | Amounts Allowed Per Order of June 17, 1987 |
|---|---|---|
| Recording Fees | $ 45.50 | $ 45.50 |
| Filing Fees | 3,162.00 | 3,162.00 |
| Meetings/Luncheon | 87.69 | — |
| Meetings/Dinner | 8.00 | — |
| Court Costs | 25.00 | 25.00 |
| Court Reporting Service | 33.00 | 33.00 |
| Lien Search | 5.00 | 5.00 |
| Prothonotary Fees | 120.00 | 120.00 |
| Travel | 790.50 | — |
| Total | $20,956.12 | $3,503.55 |

We point out that this award was made without proper documentation as to the dates, need and reasonableness of any of the expenditures.[3]

We had disallowed any reimbursement for document production, mail special handling, messenger service, photostats, secretarial overtime, telephone tolls, good standing certificate, computerized research, "velo bind" (which is completely unexplained and unknown to us), meetings/luncheon, meetings/dinner, and travel for two basic reasons. First of all, we had previously held such items to be generally non-compensable as overhead, in what we believed was a proper exercise of our discretion. *In re National Paragon*, 74 B.R. 858 (Bankr.E.D.Pa.1987); and *In re National Paragon*, 68 B.R. 337 (Bankr.E.D. Pa.1986), *rev'd*, 76 B.R. 73 (E.D.Pa.1987). Secondly, *none* of the items for which reimbursement was requested, including those items that we allowed reimbursement, were adequately detailed or documented. In fact, the only information given was by categories and amount requested. For example, the Applicant requested, and we granted, reimbursement of $3,162.00 for filing fees. There was no explanation as to date of filings, place or reason for filings, cost of each filing or even the number of filings. We believe that such a request, without further detail, could have been denied as a proper exercise of our discretion. However, we were loathe to deny almost $21,000.00 in expenses and, hence, we were lenient and granted an award of reimbursement of those categories which, if properly documented and reasonable, are appropriate for reimbursement.

With respect to those categories of expenses which we had previously held to be in the nature of overhead, we recently issued a decision, in light of the *National Paragon* reversal, in which we held that reimbursement will be granted for photocopying, postage, out-of-town travel, and long-distance telephone calls where such costs are reasonable and properly documented. *Mayflower, supra*, 78 B.R. at 47–48, 52. As we stated in *Mayflower*, we are applying the following statement:

A showing of actual and necessary [costs] cannot be accomplished merely by listing in the fee application the amount of the expenditure next to the type of expenditure. Detail must be provided to substantiate the actual and necessary nature of expenditures. For example, when claiming reimbursement for telephone calls, counsel should specify the date of each call, the person to whom the call was made, the subject matter of each call, and the amount charged for each call. This should not be difficult to do as the information should be readily available. In the case of photocopying, counsel should inform the Court of the number of copies, the cost of each copy, and provide, if possible, a breakdown of the reasons why photocopying of certain documents was necessary. *In re American International Airways*, 47 B.R. 716, 725 (Bankr.E.D.Pa.1985).

---

**3.** Although the Applicant appended approximately one hundred twenty-seven (127) pages of purported documentation for expenses, no explanation is given for the exhibit. Moreover, it appears to be an in-house computer run of checks written in this case, but the only information that can be gleaned from it is the amount of the check, date, and the gross categorization, e.g., document production, as stated above.

This decision of our predecessor, the Honorable William A. King, Jr., was cited with approval in *In re National Paragon*, 76 B.R. 73 (E.D.Pa.1987) (per DITTER, J.); and *In re Mayflower Associates*, C.A. No. 87–1051 (E.D.Pa. June 25, 1987) (per SCIRICA, J.).

The Applicant's supplemental documentation provided us with *some* additional information which was helpful to our determination of whether the costs incurred had been reasonable and necessary. Unfortunately, we still found relevant information to be so lacking as to require us to deny reimbursement of some expenses.

We have appended hereto, as Exhibit A,[*] a complete summary of the costs allowed the Applicant based upon the supplemental documentation provided to us. Apparently, the Applicant was only able to provide us with documentation for $12,116.53[4] of the requested $20,956.12. For reasons heretofore and hereinafter explained, we have no hesitancy in denying reimbursement of expenses having no explanation and no documentation, i.e., the remainder of $8,839.59 after deducting $12,116.53 from $20,956.12.

In reviewing the supplementary documentation, it is apparent that the Applicant can only provide the court with documentation for $800.80 of the previously allowed award of $3,503.55. Hence, we are compelled to vacate our previous award of expenses of $3,503.55, and enter a new award of expenses in the amount of $7,215.69, which includes the $800.80, as being reasonable and necessary. This award of costs is premised upon the supplemental documentation provided.

We are herein continuing our practice of disallowing *in toto* any requests for reimbursements for expenditures for secretarial overtime, and document production as being part and parcel of a law office's overhead, and certainly not due from the estate regardless of a law office's innovative billing capacities. *In re National Paragon Corp.*, 74 B.R. 858, 863 (Bankr.E.D.Pa.

1987). In particular, we find disturbing the charge for "document production," which is asserted to be a customary practice of billing clients on a per page basis for documents produced through the Applicant's word processing system. This practice epitomizes the unacceptable efforts by law offices to transform traditional overhead expenses, e.g., secretarial time to produce any given document, into a reimburseable expense payable by the estate. The Applicant asserts that the use of word processing is an efficient labor saving device and is a savings to the estate. We would agree with such an assertion as long as it is not passed on as an additional expense to the estate. However, we would characterize the availability of such modern time savings devices such as word processing capabilities as providing a substantial savings *to the law office*, obviously resulting in a higher net profit, rather than as providing a savings to the estate.

We, likewise, are not sympathetic to the Applicant's attempt to obtain reimbursement for secretarial overtime. This attempt presupposes that all of the secretary's straight time or regular work consisted only of work attributable to this case. Why else would overtime be reimburseable by one particular client, the estate? More disturbing is that, if one takes this attempt to its logical conclusion, any law office may allocate one secretary to one case, and require payment of that secretary's salary and benefits package by a particular client. And that secretary's use of electricity is then attributable or billable to a particular client! Clearly, a law firm has certain overhead expenses that may not be passed on to the client, and we draw the line at secretarial overtime.

While there may be situations in which reimbursement for meals may be allowable, we decline to award such in this Application. As a general proposition, we believe meals to be non-reimburseable, given

---

[*] EDITOR'S NOTE: Exhibit omitted from publication by the court.

**4.** The Applicant actually refers to having supplied documentation for $12,071.53, but we dis-

covered a $45.00 omission or computational error in the category labeled as 16115–814 (Sale of Mansfield Property), necessitating a correction to $12,116.53.

the reality that the Applicant's employees, like everyone, must eat in any event. However, where such expenditures are reasonable and necessary, we may grant reimbursement. In the case at hand, despite the fact that receipts have been supplied, and we have no doubt that money was expended and food consumed, we have received no explanation or enlightenment as to the necessity such as to pass this extraordinary expense on to the estate.

The ever-present request for reimbursement of photocopying expenses arises here in a slightly different context. Although the documentation provided reveals that this cost is twenty (20¢) cents per page for a total request of $9,319.52, there is nary a word as to the reason, let alone need for somewhere in excess of 40,000 copies! The complete omission is certainly ironic, given that even a brief word of explanation would have sufficed in light of the size of the instant case. Obviously, we do not accept the generalized explanation contained in the fee Application as containing sufficient detail. Hence, we cannot abdicate our responsibility to review the reasonableness and necessity of expenses claimed, particularly where, as is the case here, we have little firsthand knowledge of the case, since we only came to the bench in late August, 1986; and in light of the fact that the instant Application is the fifth Application for interim attorney's fees and costs and the Applicant had been admonished previously in this case by our predecessor, the Honorable William A. King, Jr., as to the necessity for detail and information in such applications.[5]

We found the file designations to be of some usefulness insofar as a few were grouped together by identifying the costs associated with the various adversary proceedings, such as individual accounts receivable actions, and those associated with the sale of specific pieces of property. Otherwise, the file designations did not explain the need or reasonableness of various expenses, nor were the categories themselves explained. One example of the lack of information provided is file No. 16115–230, identified as "Creditor Relations." This file designation leaves the Court with no clue as to what matters are included therein. Apparently of the $2,231.52 expended for photocopying, $1,155.00 was paid to an otherwise unidentified Charlene Wolstenholme and $45.00 was paid to an otherwise unidentified Lynn Levinthal for copies of administrative claims. No information is given as to numbers of copies, cost per page, or document, need, or who these persons are. This is totally perplexing to the Court and reimbursement will be denied.

Rather than deny *in toto* the Applicant's request for photocopying expenses of $9,319.52, which we firmly believe would be an appropriate exercise of our discretion, we have allowed reimbursement not to exceed $300.00 in each of the file designations. We believe this to be a compromise award and a just result given the lack of explanation and/or substantiation. *In re Metro Transportation Co.,* 78 B.R. 416, 419–20 (Bankr.E.D.Pa.1987). *See* Exhibit B for summary of expenses allowed by category.

We believe that Exhibits "A" and "B," [**] in addition to the foregoing, adequately explain the deductions in the instant award of expenses. An appropriate Order is attached.

### ORDER

AND NOW, this 20th day of November, 1987 upon further reconsideration of our Order of June 17, 1987, on the Fifth Application of COHEN, SHAPIRO, POLISHER, SHIEKMAN and COHEN (hereinafter referred to as "the Applicant") FOR ALLOWANCE OF REIMBURSEMENT OF EXPENSES expended between January 21, 1984, and December 31, 1986, in light of the Order of the Honorable John P. Fullam,

---

5. *See, e.g.,* Memorandum and Order entered August 12, 1983, docket entries 289 and 290; Docket entry No. 376, entered March 15, 1984; and Memorandum and Order entered April 30, 1984, Docket entry No. 402.

** EDITOR'S NOTE: Exhibits omitted from publication by the court.

Chief Judge of the United States District Court for the Eastern District of Pennsylvania, of September 4, 1987, and in consideration of the supplemental documentation submitted pursuant to our Order of September 22, 1987, it is hereby

ORDERED that the award of $3,503.55 in our Order of June 17, 1987, for reimbursement of costs and expenses is VACATED, and in lieu thereof, the sum of $7,215.69 is hereby authorized to be paid to the Applicant for reimbursement of said expenses.