**In the Matter of D'LITES OF AMERICA, INC., Debtor.**

**Bankruptcy No. A86–05785–WHD.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Nov. 1, 1988.

C. Richard McQueen, Greene, Buckley, DeRieux & Jones, Atlanta, Ga., for debtor.

Donald F. Walton, Judith C. Loomis, Atlanta, Ga., for U.S. trustee.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

On August 31, 1988, the Court conducted a hearing in the above-referenced Chapter 11 case on an application requesting payment of interim compensation for professional services rendered by counsel for the debtor-in-possession, the law firm of Greene, Buckley, DeRieux & Jones (hereinafter, "Applicant"). The Applicant had filed its fee request on August 3, 1988 for services performed for the debtor from March 1, 1987 through June 30, 1988. The debtor was previously authorized to employ the Applicant as its counsel by Order entered on August 12, 1986, shortly after the filing of the Chapter 11 petition.

On August 24, 1988, the United States Trustee filed comments which questioned the nature of an expense item for "document preparation" in the amount of $3,603.50 for which the Applicant sought reimbursement. The Applicant responded that "document preparation" expenses relate to the preparation of long documents for the debtor by utilizing word processing equipment and word processing specialists and that such expenses are normally charged by law firms in Atlanta and throughout the country. The Applicant further responded that the use of word processing equipment results in a savings to all of its clients.

On September 2, 1988, the Court entered an Order which approved the Applicant's requested amount of interim compensation and expenses except for the request for reimbursement of expenses relating to document preparation. The Court withheld decision on whether the document preparation charges should be allowed as a reimbursable expense. The total amount of the requested document preparation charges, as stated in the Order of September 2, is $3,595.25, rather than $3,603.50 as men-

tioned in the comments of the United States Trustee.

The United States Trustee has filed a brief which asserts that word processing falls into the category of overhead which should not be a separate reimbursable expense. The reported case law appears to support this assertion. *See In re Motor Freight Express*, 80 B.R. 44, 47 (Bankr.E.D.Pa.1987) (document production held to be part of a law office's overhead); *In re First Software, Corp.*, 79 B.R. 108, 124 (Bankr.D.Mass.1987) (word processing charges disallowed); *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 838 (Bankr.D.Vt. 1987) (word processing characterized as nonreimbursable administrative activity); *In re Wabash Valley Power Association, Inc.*, 69 B.R. 471, 479 (Bankr.S.D.Ind.1987) ("Thus secretarial and clerical services and use of word processors are not compensable."); *In re Seneca Oil Co.*, 65 B.R. 902, 913 (Bankr.W.D.Okla.1986) (word processing is nonreimbursable); *In re R & B Institutional Sales, Inc.*, 65 B.R. 876, 882 (Bankr.W.D.Pa.1986) (word processing costs are "overhead, pure and simple, attributable to the cost of doing business, and will not be compensated."); *In re Mandalay Shores*, 62 B.R. 758, 762 (Bankr.M. D.Fla.1986) (characterizing word processing as overhead); *In re Pacific Express, Inc.*, 56 B.R. 859, 866 (Bankr.E.D.Cal.1985) (word processing is customary overhead); *In re Thacker*, 48 B.R. 161, 164 (Bankr.N. D.Ill.1985) (court requested that counsel supplement an application to ensure that an entry for word processing was not ordinary secretarial costs); *In re Cumberland Bolt & Screw, Inc.*, 44 B.R. 915, 917 (Bankr.M. D.Tenn.1984) (accountants' billing entry for word processing held indistinguishable from any other overhead item); *In re Four Star Terminals, Inc.*, 42 B.R. 419, 427 n. 1 (Bankr.D.Alaska 1984) (court put applicants on notice that word processing charges are nonreimbursable, although such expenses were not requested in that case); *In re Sapolin Paints, Inc.*, 38 B.R. 807, 816 (Bankr.E.D.N.Y.1984) (word processing expense incurred by creditor's attorney held to constitute normal overhead); *In re Coconut Grove Bayshore, Inc.*, 33 B.R. 194, 196 (Bankr.S.D.Fla.1983) (in a case under the Bankruptcy Act, word processing charge held to be overhead).

The rationale behind disallowing word processing expenses was detailed by one Court as follows:

In particular, we find disturbing the charge for "document production," which is asserted to be a customary practice of billing clients on a per page basis for documents produced through the Applicant's word processing system. This practice epitomizes the unacceptable efforts by law offices to transform traditional overhead expenses, e.g., secretarial time to produce any given document, into a reimbursable expense payable by the estate. The Applicant asserts that the use of word processing is an efficient labor saving device and is a savings to the estate. We would agree with such an assertion as long as it is not passed on as an additional expense to the estate. However, we would characterize the availability of such modern time savings devices such as word processing capabilities as providing a substantial savings *to the law office*, obviously resulting in savings *to the law office*, obviously resulting in a higher net profit, rather than as providing a savings to the estate.

*In re Motor Freight Express*, 80 B.R. 44, 47 (Bankr.E.D.Pa.1987) (emphasis in original). This rationale addresses and rejects the arguments raised by the Applicant in this case, and this Court agrees in principle with the reasoning expressed.

One case which reached a contrary conclusion states that it is appropriate to allow word processing charges and other costs "in view of the practice within the profession of billing them to regular clients." *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 585 (Bankr.D.Utah 1985). The idea that bankruptcy courts should automatically allow reimbursement for expenses which might otherwise be considered overhead just because the profession as a whole succeeds with such creative billing practices is unacceptable to this Court, but such a concept does raise the following concerns.

Bankruptcy Code § 330(a)(1) provides that an award of compensation for services should be based in part on "the cost of comparable services" in non-bankruptcy cases. While this language is not included within § 330(a)(2), which provides for reimbursement of actual, necessary expenses, there is clearly a relationship between a law firm's rate for services and the items which can be charged separately as expenses. In any event, this Court is of the opinion that the policy behind § 330 is to insure that bankruptcy specialists receive no less compensation for the value of their services than their counterparts in other areas of the law, thereby insuring that highly qualified attorneys are attracted to the practice of bankruptcy law. The Court is concerned that this policy will be defeated if bankruptcy courts are the only enforcers of a policy against charging clients for overhead items, particularly if this results in different standards for bankruptcy and nonbankruptcy cases as to what items can properly be charged out to clients as expenses.

The Court holds today that word processing charges are overhead expenses which should not be separately charged to the estate, but which should instead be built into a firm's hourly rates. If this holding results in an increase in the rates for attorneys practicing before this Court beyond the "comparable" rate charges by non-bankruptcy attorneys, then creditors or the United States Trustee may well object to the allowance of fees at excessive rates, thus triggering the following areas of concern and inquiry. Suppose the rates are only "excessive" when compared to those charged by some non-bankruptcy attorneys who, in the absence of oversight by a court, continue to charge their clients separately for word processing and other items which could be considered to be a part of the general cost of doing business? In deciding upon a reasonable rate, should the Court have to inquire into what items are built into the rates normally charged by other lawyers in the district for comparable services and what items are separately billed? Would this inquiry result in a court-approved rate which is higher than the non-bankruptcy comparable rate?

Could a single firm be allowed to charge its bankruptcy clients a higher rate than its nonbankruptcy clients to make up for the expenses which will not be permitted to be recovered from the estate?

In short, the Court fears that there may be an element of a "slippery slope" in today's decision unless the bar as a whole is willing to police itself and create guidelines for billing as to what expenses should and should not be separately charged by attorneys to their clients and what expenses should be absorbed as overhead. Even in the absence of such guidelines, however, and notwithstanding the concerns expressed above, this Court will not abandon its duty to permit reimbursement from the estate only of actual, necessary expenses, which do not include overhead costs such as word processing charges.

However, in fairness to the Applicant because this holding is a new rule for practice in this district (although clearly foreshadowed by case law throughout the country), the Court will permit reimbursement of 50% of the requested word processing expense item, but the Court will not permit future reimbursement for such expenses to this Applicant or to others to the extent that the expenses are incurred after opportunity for reasonable notice of this Order is given to the bar, one month after the date of entry.

Accordingly, it is ORDERED that the request of the debtor's counsel, Greene, Buckley, DeRieux & Jones, for reimbursement of the document preparation expense of $3,595.25 is approved to the extent of $1,797.63, and that the payment of $1,797.63 is authorized to be made as set forth in the Order entered on September 2, 1988, which addressed all other matters raised by the application for interim compensation, and it is

FURTHER ORDERED that the Clerk shall serve a copy of this Order upon the debtor, the debtor's attorney, counsel for the Creditors' Committee, and the United States Trustee.

IT IS SO ORDERED.