**In re Frank N. DAULERIO and Mary L. Daulerio, his wife (Bankruptcy Nos. 78–1753WK and 78–1754WK consolidated with this case), Debtors.**

**Bankruptcy No. 78–1752WK.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 5, 1987.

As Amended March 13, 1987.

See also, Bkrtcy., 10 B.R. 848.

8. A default judgment has already entered against the Church.

Mary F. Walrath, Philadelphia, Pa., former counsel to debtors.

Michael Salem, U.S. Dept. of Justice, Washington, D.C., for U.S. I.R.S.

James A. Burgess, Jr., Philadelphia, Pa., for Bud Fisher Auto Sales, Inc.

Arsen Kashkashian, Jr., Philadelphia, Pa., for debtors.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Before us in this interminable case instituted under Chapter XII of the Bankruptcy Act on November 28, 1978, is a Motion filed by the law firm of Clark, Ladner, Fortenbaugh, and Young (hereinafter referred to as "Clark, Ladner") seeking to distribute $43,087.64 from a sum of approximately $71,000.00 which it holds in an escrow account from the proceeds of the sale of realty previously owned by its former clients, the Debtors in this case, to none other than itself. Since the other potential recipients of the escrowed funds include two (2) creditors, the most prominent of which is the Internal Revenue Service (hereinafter referred to as "IRS"), who have liens against the premises which total a sum in excess of the entire fund balance, we can allow to Clark, Ladner only those sums which it is clear to us here represent services expended towards preserving the secured creditors' liens. A careful review of detailed Exhibits accompanying Clark, Ladner's fee application results in a conclusion that Clark, Ladner expended services reasonably valued at $24,544.50 towards this purpose, which is coincidentally almost exactly the amount of a "separate escrow fund" which Clark, Ladner claims to have established for payment of the IRS liens. It therefore seems to us totally just to award this sum to Clark, Ladner, and we will proceed to do so.

Any attempt by us to recite the history of this case, which preceded our arrival on the bench by almost eight (8) years, could not do it justice. Our perusal of the Docket Entries suggests that material for a good-sized and very entertaining novel is probably contained between its lines. Suffice it to say that the most recent entries concern contempt claims against the Debtors which have been thankfully transmitted to the Southern District of Florida, and that Clark, Ladner, having served as the Debtors' Counsel from their replacement of previous counsel in November, 1981, to their withdrawal from representation in September, 1985, is remarkable in its relative longevity in representation of the Debtors.

The seed for the present controversy was planted on September 4, 1985, when, just before being permitted to withdraw from the case, Clark, Ladner filed a voluminous Application for Allowance of Counsel Fees, seeking, in toto, $58,760.00 as compensation for services and $1,422.75 as reimbursement for costs. We are unable to explain why, but we observe that this matter was not brought before the Court until July 3, 1986, when Chief Judge Thomas M. Twardowski, apparently temporarily sitting in Philadelphia, granted the Application in its entirety.

On September 3, 1986, the instant Motion was filed. A creditor secured with a judgment lien in the amount of $3,860.63, Bud Fisher Auto Sales, Inc., answered with a request that its lien be satisfied out of the proceeds. The IRS was, however, strangely silent, especially since it had a tax lien of over $180,000.00 which would clearly consume the fund if Clark, Ladner did not succeed in doing so. When the matter came before us on October 2, 1986, Clark, Ladner requested a continuance to make certain that the IRS was served, and thereafter certified that they served Michael J. Salem, Esquire, a Tax Attorney with the IRS' Trial Division, with a copy of the Motion on October 3, 1986.

When the matter next came before us on November 4, 1986, the IRS was again conspicuous by its absence. Sensing the legal precariousness of its position, Clark, Ladner submitted, despite the apparent lack of opposition, a new version of its previously-

submitted Application, highlighting those hours spent on services allegedly rendered in "preservation, sale, and distribution of the proceeds" of the sale of the Debtors' realty and a 13–page Memorandum of law. Coincidentally, the highlighted figures exceeded $40,000.00, a sum only slightly less than the entire amount awarded to it by Judge Twardowski, less a retainer in excess of $15,000.00.

The Court was puzzled by the out of character munificence of the IRS in not contesting Clark, Ladner over its right to the funds. Therefore, on December 1, 1986, we sent a copy of a letter to Clark, Ladner's Counsel, copied to several attorneys who had represented the IRS before us, enclosing the Motion and indicating that we would hold up any action on the Motion until December 12, 1986, but, if we received no written response by that date, we would accede to Clark, Ladner's request, assuming it to be uncontested.

December 12, 1986, came and went and we heard nothing. Therefore, on December 16, 1986, we entered an Order permitting Clark, Ladner to disburse $43,087.64 to itself from the fund.

However, we subsequently learned that, on December 31, 1986, the IRS filed a Motion for Reconsideration of our Order of December 16, 1986, which it stated was based upon Bankruptcy Rule 923 (repealed and replaced with Bankruptcy Rule 9023 over three (3) years ago) and Federal Rule of Civil Procedure (hereinafter known as "F.R.Civ.P.") 59. And, on February 5, 1987, the self-same Michael J. Salem, Esquire, to whom Clark, Ladner certified that it sent notice of the Motion on October 13, 1986, came before us to argue this Motion.

The slothful behavior of the IRS here finds a close parallel in the similar conduct of the IRS which we strongly condemned in *In re Owens*, 67 B.R. 418, 421–22 (Bankr.E. D.Pa.1986). On this occasion, Mr. Salem attempted to excuse the failure of the IRS to meet the 10–day deadline for service of its Rule 9023 Motion (Clark, Ladner claimed to have received its copy on January 5, 1987, and the Court's copy was stamped in on December 31, 1986) with

excuses including a total meritless argument that Friday, December 26, 1986, was a "federal holiday," refusing to accept our assurance that this Court was in fact open that day.

However, as in *Owens* we will consider the Motion here on its merits. We note that the IRS did file an Answer to Clark, Ladner's Motion on December 12, 1986, albeit that no one from the IRS considered it appropriate to advise us of the filing. Also, we were able to justify considering the entry of our Order as a species of "clerical mistake," and, although we do *not* consider it appropriate to convert untimely Motions per Bankruptcy Rule 9023 and F.R.Civ.P. 59 into Motions per Bankruptcy Rule 9023 and F.R.Civ.P. 60(b), we will consider the Motion timely here because our actions represented an error "arising from oversight or omission" on the part of the Court, which may be corrected by our own initiative or motion of any party at any time, per Bankruptcy Rule 9024 and F.R. Civ.P. 60(a). Therefore, we agreed to reconsider our Order of February 5, 1987.

Mr. Salem nevertheless exhibited what might be considered an element of additional neglect by refusing our repeated invitation to supplement his rather paltry two-page Memorandum submitted as a rejoinder to Clark, Ladner's 13–page salvo. Clark, Ladner, meanwhile, accepted our invitation and responded with a thoughtful eight-page response to the IRS' two-page offering.

Although the IRS therefore appears to be daring the Court to rule entirely against it, the few cases cited by the IRS and our considerable independent research indicates that we must resist this temptation and rule at least in part in the IRS' favor.

Similar confrontations between the interests of attorneys for the debtor or the trustee who has sold secured realty and creditors holding security interests in such realty have arisen in cases decided both under the present Bankruptcy Code and the predecessor Bankruptcy Act. Addressing the pertinent Code Section, Collier states that

Section 506(c) was intended by Congress as a codification of ... the equitable principle that a lienholder may be charged with the reasonable costs and expenses incurred by the debtor, debtor in possession, or trustee which are required to preserve or dispose of the property subject to lien to the extent the lienholder derives a benefit therefrom. 3 COLLIER ON BANKRUPTCY, ¶ 506.06, at 506–53 (15th ed. 1986).

Accepting the accuracy of this statement, as did our colleague, Judge Fox, in his very recent Opinion in *Birdsboro Casting Co.*, 69 B.R. 955, 957 (Bankr.E.D.Pa., 1987), we conclude that cases interpreting 11 U.S.C. § 506(c), which reads as follows, are helpful to our disposition:

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

We note that Judge Fox's decision in *Birdsboro Casting* is consistent with (1) recent decision of this Court's present and immediate past Chief Judges, *In re Fazio*, 57 B.R. 316 (Bankr.E.D.Pa.1986) (per GOLDHABER, CH.J.); and *In re Baum's Bologna, Inc.*, 50 B.R. 689 (Bankr.E.D.Pa. 1985) (per TWARDOWSKI, J.); (2) Collier, as indicated above; and (3) the only known appellate decisions which have addressed § 506(c) in this context, *In re Flagstaff Foodservice Corp.*, 739 F.2d 73 (2d Cir., 1984); *In re Trim-X, Inc.*, 695 F.2d 296 (7th Cir.1982); and *In re Anderson*, 66 B.R. 97 (9th Cir.Bankr.App.1986), we therefore conclude, with this authority, that Clark, Ladner can succeed here only if it meets the burden of proving the elements of § 506(c) set forth in *In re AFCO Enterprises, Inc.*, 35 B.R. 512, 514 (Bankr.D. Utah 1983), and expressly approved by the Third Circuit Court of Appeals in *In re McKeesport Steel Castings Co.*, 799 F.2d 91, 94 (3d Cir.1986):

> First, the costs and expenses must have been reasonable and necessary; second, the costs and expenses must have been incurred for the purposes of preserving or disposing of the secured property; and third, any recovery for costs and expenses is limited to the extent of the benefit of the holder of the secured claim.

As Collier suggests, these principles are entirely consistent with those established under the predecessor Bankruptcy Act, which controls this case. In all fairness to the IRS, it has identified most of the applicable recent local authorities setting forth these principles in its brief Memorandum, *i.e.*, *In re Pioneer Sample Book Co.*, 374 F.2d 953 (3d Cir.1967); *In re Street*, 184 F.2d 710 (3d Cir.1950); *Miners Savings Bank v. Joyce*, 97 F.2d 973 (3d Cir.1938); and *In re Williams*, 2 B.R. 563 (Bankr.D. Del.1980).

Clark, Ladner struggled ingenuously to preserve its claim to all of its sought-after fees in the face of this authority. First, it argued that it has an attorney's "charging lien" on the escrow funds due to the fact that the funds were allegedly created by its efforts. Cases cited by Clark, Ladner in support of this argument are *In re Fitterer Engineering Associates*, 27 B.R. 878 (Bankr.E.D.Mich.1983); *In re Family & Industrial Medical Facilities, Inc.*, 25 B.R. 443 (Bankr.E.D.Pa.1982) (per KING, J.); and *In re Laird*, 6 B.R. 273 (Bankr.E.D.Pa. 1980) (per GOLDHABER, CH.J.). Based upon the first premise that it had such a charging lien, it proceeded to argue that 26 U.S.C. § 6323(b)(8) provides for a priority of an attorney's charging lien obtained in acquiring a judgment or settlement over that of the United States on behalf of the IRS.

The difficulty with application of this reasoning is the lack of merit in the first premise. Comparison of the results in *Fitterer, Family & Industrial*, and *Laird* to the instant situation leads to the observation that each of those cases involved attorneys who were asserting charging liens obtained through non-bankruptcy proceedings separate from administration of debtors' estates. It is apparent that any such lien claims by attorneys "must give way in the face of stronger public policy." *In re Garcia, New World Marketing Corp. v.*

*Garcia,* 69 B.R. 522, 525 (Bankr.E.D.Pa., 1987) (per FOX, J.). Here, what is in issue is an entirely different policy than was in issue in those three (3) cases, i.e., the well-established priority of claims of secured creditors over those of attorneys for services performed in administration of estates. As is indicated *supra,* the courts have spoken quite frequently and quite clearly on this issue. We are not inclined to allow these rules to be cast aside by the claim of an attorney's charging lien arising from services of administration by counsel for the Debtors.

A more convincing argument is advanced by Clark, Ladner in its recently-filed Reply to the IRS' brief Memorandum. Therein, Clark, Ladner argues that all of the services which were highlighted in the version of its Application submitted to the Court on November 4, 1986, were incurred in preservation of the real estate in issue, were devoted to the benefit of the IRS, and hence are recoverable by it. Among the particular tasks which Clark, Ladner claims that it performed towards the end of benefiting the IRS were "the negotiation and establishment of a separate escrow fund ... designed for payment of the IRS liens" in the amount of $21,113.04, which, with interest, allegedly had grown to $24,547.53 by November 4, 1986; and a contest with other creditors, Terra Sol Immobilien GmbH, and Sonesta GmbH[1] seeking payment of certain interest and costs from the escrow funds in the amount of $44,131.69, which our predecessor, the Honorable William A. King, Jr., denied in an Opinion of March 12, 1986.

We believe that Clark, Ladner is indeed entitled to compensation for services for which it has met its burden of proving to this Court were expended solely to the benefit of the IRS. We have carefully reviewed every entry on the highlighted fee Application and have concluded that services reasonably compensable in the total sum of $24,544.50 are attributable solely to the benefit of IRS.

We recognize that this sum may appear arbitrary to both Clark, Ladner and to the IRS, but we note that neither party has presented us with an analysis of precisely which entries relate to services that directly benefited the IRS. The IRS provided no analysis of the Clark, Ladner Application at all, apparently assuming, contrary to the very language of the Third Circuit Act cases cited by it, which contain mostly language critical of trustees who attempt to charge for all services incurred in administration against the claims of secured creditors, that these cases supported the elimination of all claims made by Clark, Ladner. Consistent with a Notice to All Trustees issued by the Board of Judges of this Court on December 30, 1986, that the judges do not intend to approve trustees' sales unless unsecured creditors will receive more than nominal proceeds from such sales, we are inclined to look very critically at instances where trustees (or debtors-in-possession) proceed to sell assets and there is no benefit to unsecured creditors. We also note our strict adherence to the *Pioneer Sample Book* holding that trustees should not hire counsel in cases where administration of an estate involves a simple matter of sale of assets which will not inure to the benefit of unsecured creditors. 374 F.2d at 960.

However, even without the assistance of the IRS in critically reviewing same, our independent analysis leads to the conclusion that the November 4, 1986, version of Clark, Ladner's Application highlights many matters which did not inure solely to the benefit of creditors, most notably many hours of communications between counsel and the Debtors. We also feel comfortable with the sum which resulted from our computations, because it is very close to the sum which Clark, Ladner claims to have established solely for the IRS in a separate escrow fund and because it is a compromise figure representing about half of what Clark, Ladner sought.

We shall therefore enter an Order granting Clark, Ladner's Motion to the extent of

---

**1.** We are thankful that, in writing Opinions, we need not read them orally, thus saving ourselves the embarrassment of attempting to pronounce the names of these parties.

$24,544.50, and, after an allowance of $3,860.63, without further interest, to Bud Fisher Auto Sales, Inc., direct Clark, Ladner to pay the balance held in escrow to the IRS.