In re **MAYFLOWER ASSOCIATES**, a Partnership, Debtor.

**Bankruptcy No. 85–04984K.**

United States Bankruptcy Court, E.D. Pennsylvania.

Aug. 26, 1987.

As Amended Sept. 22, 1987.

Robert Szwajkos, Philadelp., Pa., for debtor.

Robert Kargen, Blue Bell, Pa., for Nassau Sav. & Loan Assn.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

On June 25, 1987, the District Court, per the Honorable Anthony J. Scirica, entered an Order in C.A. No. 87–1051, remanding our award of compensation to the Debtor's counsel in this case, the law firm of RUBIN, QUINN, and MOSS (hereinafter referred to as "the Applicant"). The award, originally filed on October 21, 1986, and reaffirmed by us on January 21, 1987, on reconsideration after a hearing on January 7, 1987, allowed the Applicant $28,157.50 of $32,492.00 sought as compensation for legal fees and $320.00 of $824.09 sought for costs.

In its Order, the District Court stated that, since we had not articulated our reasoning for making reductions in detail and may have, in the view of that Court, imposed impermissible "unilateral thresholds" on recovery of costs and intra-office meeting time, the case was remanded for a determination of the Applicant's claim "on an individual basis."

The District Court, in its Order, cited to a decision of our precedessor, the Honorable William A. King, Jr., *In re American International Airways*, 47 B.R. 716 (Bankr. E.D.Pa.1985) (hereinafter referred to as

*"AIA"*), with approval. The specific areas of difference between the approved *AIA* result and the standards which the District Court found this Court to have adopted were the following: (1) Denying all or most intra-office conference time out of hand; and (2) Denying costs of copying, postage, travel, and telephone calls as overhead.

In analyzing the first area of disallowances, the District Court quoted the assertion by the Applicant, in its Brief, that this Court "disallowed 12.6 of 19.8 claimed client conference hours, 18.3 of 21.2 intra office conference hours, and all expenses other than filing fees." Order, slip op. at 2 n. 1.

We should also note that, on June 30, 1987, and July 30, 1987, Memoranda and Orders were entered by District Judges J. William Ditter and Clifford Scott Green, respectively, in *In re National Paragon Corp.*, 76 B.R. 73; and *In re Donut Shops Management Corp.*, 77 B.R. 451, reversing the result set forth in our Opinion and Order of December 23, 1986, reported at 68 B.R. 337. In *National Paragon*, Judge Ditter held that this Court erred in "the automatic exclusion of photocopying, postage and travel expenses, which are distinguished from overhead expenses such as rent, utilities and salaries because they are incurred on behalf of a particular client, ..." At 74. Judge Green concurred with Judge Ditter's Memorandum. In support of the *National Paragon* result, Judge Ditter cited eight bankruptcy court decisions, four of which supported his conclusion, *i.e.*, *In re Island Helicopter Corp.*, 53 B.R. 71, 72–73 (Bankr. E.D.N.Y.1985); *In re Thacker*, 48 B.R. 161, 162–65 (Bankr. N.D.Ill. 1985); *AIA, supra;* and *In re Garnas*, 40 B.R. 140, 141 (Bankr.D.N.D.1984).

Upon receipt of the District Court's Order in this case, we entered an Order of July 13, 1987, which directed the Applicant to indicate whether it wished to amend or supplement its Application or submit a Brief in light of the District Court Order and whether it wished to present further testimony at a hearing pre-scheduled on July 29, 1987, and to submit any such materials on or before July 24, 1987. We also requested "specific references made to the times specified by the Applicant for 'Meeting with clients' and 'Intra-Office Meetings' ... as our own calculations of these times are different." The Applicant responded with a submission which, in helpful fashion, collected all of the prior filings; included a copy of its District Court Brief incorporating that of the Applicant in *Donut Shops;* an annotated copy of its Application, on which we originally had indicated which entries we disallowed by check marks and on which the Applicant designated entries which we had indicated we had disallowed as "attorney meetings," "client meetings," and "other disallowances;" and a Chart indicating the total disallowances in each category by attorney. Messrs. Szwajkos and Rubin of the Applicant appeared on July 29, 1987, to argue in support of the Application as originally submitted. When we mentioned the discrepancies in our quantitative calculations with his own, Mr. Szwajkos indicated that he did not consider the quantitative analyses to be very significant. The Applicant did not request an opportunity to submit any additional written material to us.

We have now very carefully reviewed every entry on the Application. We have also attempted to formulate policies for review of fee applications which we believe to be consistent with the District Court Opinions here and in *National Paragon* and *Donut Shops.* We then proceeded to redo all of our calculations on this Application in light of these policies. We observe that the end result is but a $150.95 increment in our award of October 21, 1986.

The Orders by the District Court in this case, in *National Paragon,* and in *Donut Shops* could conceivably be read as directives not to apply *any* general guidelines to assessment of fee applications, but to merely evaluate each fee application subjectively. However, we believe that the District Court is aware of the tremendous number and length of fee applications which we must decide quickly, and therefore recognizes that we must develop some criteria short of "instinct" for determining what services are compensable and what are not in fee petitions.

We also believe that it is fair to the bar for us to be as consistent and as objective as we can in reviewing fee applications, and as clear as we can in describing what services will be compensable and what will not be before, rather than after, applications are prepared and submitted. In this way, counsel can know beforehand what will be compensable and what will not, and can provide their services and prepare their fee applications accordingly. Also, objectivity assures against unjust favoritism of one counsel or firm over another on any sort of irrational basis.

In reviewing fee applications we adopted the time-honored procedure of our predecessor-judges in the Philadelphia station of this Court of placing check-marks beside each entry on fee Applications which we disallowed. While we usually disclaimed the total accuracy of these markings in the past, it is our intention in the future to be more careful in doing so, in order that counsel can rely on our check-marks as a basis for knowing what disallowances we have made and, in this way, providing ap-

plicants with notice of at least most of the adjustments on any given application.[1] Because of this practice, the Applicant here was able to readily determine just what services we disallowed. We do not understand the Applicant here to have indicated any dissatisfaction with this procedure.[2]

We must observe at the outset that our quantitative analysis of the disallowed compensation on the instant Application is significantly different from that of the Applicant. With respect to time spent in conferences with clients, which we believe must include telephone conversations, as well as face-to-face meetings with clients, we count on expenditure of 118.4 hours of the Applicant on such activities. Further, we identified only 9.8 hours of such activities which we disallowed, although this figure could arguably be said to rise to the 12.6 figure asserted by the Applicant if certain disallowances are counted as *both* "attorney meetings" and "client meetings" in those several instances where several attorneys of the Applicant met with certain clients at once.[3] Therefore, instead of disallowing

1. We do note, however, that we are speaking only for ourselves, and not for our brethren, Chief Judge Twardowski and Judge Fox, in establishing this policy.

2. We note that it is possible that Judges in the District Court are not aware of this practice. *See In re Daulerio,* 71 B.R. 112 (Bankr.E.D.Pa. 1987), *remanded,* C.A. No. 87–2287 (E.D.Pa., Bench Opinion dated July 1, 1987) (per VAN ARTSDALEN, J.). In that case, the District Court, though agreeing with our reasoning on all issues raised by the parties and not disputing the propriety of our specific result, remanded the matter to us in order that we "make specific findings," as purportedly is required by *Daggett v. Kimmelman,* 811 F.2d 793, 797 (3d Cir.1987). Initially, we do not read *Daggett* as requiring any judge to produce a line by line analysis of every disallowance on a fee application, which might be one way of reading the District Court's directive in *Daulerio.* The District Court quotes *Daggett* thusly, 811 F.2d at 797: " 'if [a] court believes that a fee reduction in the lodestar is indicated, it must analyze the circumstance requring the reduction and its relation to the fee, and it must make specific findings to support its action.' *Prandini v. National Tea Co.,* 585 F.2d 47, 52 (3d Cir.1978)." Both *Daggett* and *Prandini,* however, address circumstances where the trial court made an across-the-board percentage cut of the lodestar. They did not support the conclusion that every line-item reduction in the

fee application be supported by a specific and separate finding.

Further, we believe that efforts to make more elaborate specific findings than our check-marks of every disallowed entry on a fee application, would be totally beyond our capacity (and our secretarial capacity). We receive, on a daily basis, applications containing hundreds and even thousands of entries. It certainly would be not only burdensome, but it would be virtually impossible, to make specific written findings on each entry, and would eliminate our capacity to do anything but labor on fee applications. We fear that it would also encourage us to reduce disallowances to thereby avoid a volume of work.

Hence, we believe that a perfectly acceptable and practical procedure is our careful sight-review of each fee-application entry and our marking the fee application with checks for disallowances.

3. We are therefore obliged to observe that we reject the Applicant's statements to us and to the District Court that we disallowed 12.6 of 19.8 client conference hours, or sixty-four (64%) percent of such hours. As indicated above, we offered the Applicant a full opportunity for explaining this discrepancy at the court proceeding on July 29, 1987, but the Applicant merely attempted to disaffirm the significance of the very quantitative analysis which was so prominent in its previous presentations. It appears

sixty-four (64%) percent of client-conference time, we actually disallowed about 8.3 percent of such hours. We also note that, while the Applicant asserted that client conference time consumed only 7.4 percent of the total hours claimed in the Application, our computations indicated that client-conference time consumed 118.4 hours of the entire 267.8 hours for which compensation was sought, or about 44.25 percent of the total time expended.

■ Our quantitative computation of intra-office conference time is less dramatically different, but nevertheless different, from that of the Applicant. Rather than finding that we disallowed 19.8 hours of 21.2 of such time claimed, we found that the Applicant sought compensation for 39.6 hours for such activities, and that disallowed 22.5 hours of such time. We also observe that the sum of client-conference time and intra-office conference time consumed 158 of the 267.8 hours claimed, or about 59 percent of all of the services for which compensation was sought.

In its District Court Brief, the inclusion of which in its submission to us causes us to conclude that the Applicant reasserts its contents to us, the Applicant's principal argument regarding client-conference time is a quantitative comparison between the facts of *Daly v. Hill*, 790 F.2d 1071 (4th Cir.1986), and this case. In *Daly*, the court reduced 107.4 hours of client-conference time to 10 hours. The Applicant argues that "[g]iven the relatively small time spent in the instant case with clients, the detailed documentation of this time and the complexity of this case, the court in *Daly* would hold here that the time spent meeting with clients was reasonable, necessary and therefore compensable." Brief of Rubin, Quinn & Moss, Appellant, at 9. Obviously, this comparison fails in light of the fact that we disallowed less than 10 hours of such time, and the *Daly* court allowed but 10 hours, even though the Applicant

requested more compensable time for this activity than did the applicant in *Daly*. It is apparent to us that, from a quantitative standpoint, we were considerably more lenient than the *Daly* court. Therefore, we reviewed our previous disallowances in this area carefully.[4]

We also must note the relative lack of legal complexity of this case. The Docket includes but 114 entries, which is modest for a Chapter 11 case. Twenty-two (22) of these relate solely to fee applications. This case generated one, uncontested Adversary proceeding, and, as far as we can tell from the cold Docket Entries in a case which was litigated mainly before our predecessor, Judge King, generated but one or two Motions which were contested at any stage, all of which appear to have been resolved prior to trial. No issue in the case has required the extended attention of the Applicant in nearly the same degree as this fee Application. Therefore, we find that this case is and was relatively straightforward, and hence not a case that would justify a reward to counsel for tackling an unusually complex or difficult case. We shall, moreover, at pages 48–52 *infra*, present a page-by-page and line-by-line analysis of all of our disallowances in the case.

In the area of intra-office conferences, we begin from an analysis of the *AIA* decision of Judge King, which the District Court cites as an example of a case which properly applied 11 U.S.C. § 330(a) in this area. There, Judge King stated as follows:

> We have previously held that the estate should not have to bear the cost of compensating each attorney present at an inter-office conference unless the attorneys can show that the estate benefited from each attorney's special area of expertise (e.g., a tax attorney consulting with the attorney in charge of the bankruptcy case). *In re Bible Deliverance Evangelistic Church*, 39 B.R. 768, 777

---

that the District Court assumed the accuracy of this quantitative analysis and may have been influenced by it in rendering its decision.

**4.** Frankly, we never reviewed the accuracy of the Applicant's quantitative analysis prior to the

remand of the case. We rarely do such an analysis in any event, and did so here only because the Applicant gave such prominence to this issue.

(Bankr. E.D.Pa.1984). The frequency of the inter-office conferences and the length of time each entailed are factors in the Court's decision whether to deduct time for excessive conferences. *Id.* In the absence of a showing by counsel of the purpose of the conferences, and why the conferences were essential to the efficient management of this case, counsel cannot receive full compensation for each attorney who was present at the conferences. 47 B.R. at 724.

■ In an Opinion in the *National Paragon,* case filed by us on June 10, 1987, 74 B.R. 858, subsequent to the decision ultimately reversed by Judge Ditter on June 30, 1987, 76 B.R. 73, which is reported at 68 B.R. 337, but prior to the District Court Orders here, in *National Paragon,* or in *Donut Shops,* we addressed in detail our policy for considering intra-office conference time. Stating that heretofore "we have not articulated our policy very clearly in this area, nor have we been as consistant as we would have liked," 74 B.R. at 864, we developed the following general guideline:

we will compensate such time only once for all of the conferees, measuring the rate at the average conferees' normal rate.[1]

1. By way of example, if two lawyers, with average rates of $150.00 and $125.00 confer for one hour, we will compensate the applicant with one hour at $137.50 per hour. If three lawyers, with average rates of $175.00, $125.00, and $100.00, respectively, confer for one hour, we will compensate the applicant with one hour at $133.33 per hour.

74 B.R. at 859 & n. 1.[5]

We believe that this recently-articulated policy is consistent with that established by Judge King in *AIA.* It also appears consistent with that established by other courts. *See, e.g., In re S.T.N. Enterprises, Inc.,* 70 B.R. 823, 836 (Bankr.D.Vt.1987) (conferences not compensable at all without

an explanation of their necessity); *In re Wabash Valley Power Ass'n, Inc.,* 69 B.R. 471, 478 (Bankr.S.D.Ind.1987) (court will not generally compensate conference time); and *In re B & W Management, Inc.,* 63 B.R. 395, 405 (Bankr.D.D.C.1986) (court allows only attorney with the higher rate to bill for conferences).

Speaking generally, despite the efforts of the Applicant to convince us that this case was extraordinary, and that this factor justifies full-billing for all conference participants in all conferences, we decline to do so for several reasons.

The first is that the case does not appear to us to present any difficult legal issues, and none have been specifically identified to us. The fact that one attorney, George C. Brady, Esquire, was an expert in pertinent state realty law and the other, Robert Szwajkos, Esquire, was an expert in bankruptcy law, is not, to our thinking, at all extraordinary. The fact that these two attorneys blended their expertise certainly justifies some compensation for conferences, and we do intend to modify our previous disallowances, as indicated at pp. 48–52 *infra.* However, we again note that very little, if any, adversarial litigation was involved in this case. While not wishing to demean successes accomplished through negotiation or just good preventive lawyering, of which this case may be an example, we note that neither in its Application nor at the hearing on January 7, 1987, did the Applicant suggest that there was anything very difficult or novel issues presented in realty law or in bankruptcy law by this case.

The second is that the need for communication between counsel was diminished by the significant amount of time that each attorney spent in conference with clients. Frankly, we consider a case wherein 59 percent of the time is spent conferencing among clients and counsel to present a situation where, unless extremely detailed and convincing explanations are presented,

---

5. We stress, however, that this is not a rigid formula, but merely a guideline. We later indicated in the same Opinion that "we will totally disallow excessive time in such conferences"

and "in extremely well-justified, extraordinary situations, allow full compensation to [all] participants." *Id.,* 74 B.R. at 865.

an across-the-board reduction, similar to that undertaken by the court in *Daly, supra,* and *Daggett, supra,* may be appropriate.

■ The third is that many of the conferences were not between just Messrs. Brady and Szwajkos, but also between Mr. Szwajkos and other members of the firm, notably Messrs. Spence and Cilio. The specialties of these attorneys appear nowhere on the record, and we could therefore justify, but will refrain from, cutting all of this conference time. Because we are basically announcing this policy in this decision, we have attempted, whenever possible, to give the Applicant the benefit of the doubt as to whether it described the subject matter of conferences with specificity, which we believe is ordinarily a prerequisite for any compensation. We have, for instance, allowed time in most conferences with clients and among firm members where the only description of the contents was "bankruptcy," which was presumably the general subject of all matters of which conferences for which compensation was sought from this *bankruptcy* court. In the future, more specificity will be prerequisite to prevent disallowances. We have, however, cut those where no explanation at all was provided or simply undesignated "strategy" is indicated as the subject matter. Especially in the context of this extended litigation of the instant fee Application and our offer to the Applicant to make further amendments to particularize its requests after remand, we must disallow totally vague entries even at this juncture.

Therefore, while we are inclined to provide more allowances for such intra-office conference time at this juncture than in October, 1986, in accordance with our second *National Paragon* decision, we are not nearly prepared, as the Applicant apparently urges, to pronounce this case as the extraordinary case where all intra-office conference participants will be awarded the full compensation requested.

■ The final issue demanding our attention is the issue of costs. While we continue to respectfully disagree with the holdings of the District Court Judges, *see*

our second *National Paragon* Opinion of June 10, 1987, *supra,* 74 B.R. at 860–64, as we believe that the practical result of them is to hold that such costs are not "overhead" as a matter of law, we further recognize that we are bound to follow their decisions. We shall therefore heretofore grant compensation for photocopying, postage, travel, and long-distance telephone calls. However, at least subsequent to this Application, we shall do so only when requests for such items are properly documented.

The requirement that documentation for such expenditures must be provided to obtain compensation is certainly not novel. Both Judges Scirica and Ditter cite with approval to, again, Judge King's Opinion in *AIA,* where he states the following:

A showing of actual and necessary cannot be accomplished merely by listing in the fee application the amount of the expenditure next to the type of expenditure. Detail must be provided to substantiate the actual and necessary nature of expenditures. For example, when claiming reimbursement for telephone calls, counsel should specify the date of each call, the person to whom the call was made, the subject matter of each call, and the amount charged for each call. This should not be difficult to do as the information should be readily available. In the case of photocopying, counsel should inform the Court of the number of copies, the cost of each copy, and provide, if possible, a breakdown of the reasons why photocopying of certain documents was necessary. 47 B.R. at 725.

In his Opinion in *National Paragon,* Judge Ditter cites to *In re Island Helicopter Corp.,* 53 B.R. 71, 72–73 (Bankr.E.D. N.Y.1985); and *In re Thacker,* 48 B.R. 161, 162–65 (Bankr.N.D.Ill.1985), in addition to *AIA,* as three of the four cases supporting the decision. In *Island Helicopter,* the court limited photocopying costs to ten ($.10) cents per page and disallowed all undocumented travel costs. In *Thacker,* the court denied compensation for any expenses not documented by receipts or, in the case of photocopying, by a breakdown

of actual costs expended. Some courts have been even more exacting. *See S.T.N., supra,* 70 B.R. 834, 844 (photocopying costs allowed at not more than 20¢ per page; travel expenses allowed only when documented at no more than 21¢ per mile; long-distance telephone charged allowed only when accompanied by an explanation of why a letter would not suffice; and postage allowed only at regular rates unless specific explanation is given as to why regular postage was insufficient).

 We will, therefore, strictly adhere to the *AIA* and *Thacker* decisions. Photocopying will be allowed at no more than twenty ($.20) cents a page and only if there is a "breakdown" of what was copied and the reasons why all of the copying for which compensation is sought was necessary.[6] Other costs will be totally disallowed if not accompanied by receipts and some reasonable explanation as to why such expenditures were necessary. While we do not anticipate requiring the detail demanded by the court in *S.T.N.,* we do expect some explanation of the reasons for all such requests or they will be denied.

 There is one overriding principle which must be recalled, i.e., that the burden is upon the Applicant to prove its right to compensation. As *AIA* and practically every case in this area indicates, requests must be specific and detailed and time spent must be documented and explained thoroughly, especially when compensation is sought, not for court appearances of

which the court, having first-hand exposure, can readily evaluate, but for such activities as conferences and research. *See, e.g., In re Wildman,* 72 B.R. 700, 714–15 (Bankr.N.D.Ill.1987); *S.T.N., supra,* 70 B.R. at 836; *In re Seneca Oil Co.,* 65 B.R. 902, 909 (Bankr.W.D.Okla.1986); and *In re Esar Ventures,* 62 B.R. 204, 205–06 (Bankr.D.Hawaii 1986).

Having set down the foregoing principles, we shall now proceed to analyze the fee Application of the Applicant here, page-by-page, in detail. We reiterate, as we stated *supra* at p. 44 n. 2 *supra,* that we do *not* anticipate performing this exercise on any but those instances where the District Court has directed us to do so, and principally in order that the instant Application can serve as a model of our thought-processes in considering other applications.

In so doing, we have numbered the pages containing services for which fees are requested one through forty-one (41), although we observe that the pages have no numbers. We shall further reference the pages by attorney and date of each entry addressed. We shall specifically address each entry which we either (1) originally disallowed or (2) intend to disallow at this juncture, and give the specific reason for our original action or any changes. We shall also maintain a cumulative record composing our present and final disallowances with those effected on October 21, 1986, in the right-hand column.

ROBERT LAPOWSKY, ESQUIRE

| Page | Entry Date | Change (if any & Reason) | Allowance (+) or Disallowance (−) | Cumulative Comparison |
|------|------------|--------------------------|-----------------------------------|-----------------------|
| 1 | 11/7 | No Change (hereinafter referred to as "NC")—Meeting re fees is disallowed | — | — |
| | | Lapowsky change | | — |

GEORGE C. BRADY, ESQUIRE

| Page | Entry Date | Change (if any & Reason) | Allowance (+) or Disallowance (−) | Cumulative Comparison |
|------|------------|--------------------------|-----------------------------------|-----------------------|
| 2 | 11/5 | Disallow (hereinafter referred to as "D" all of time—subject matter not indicated and | | |

---

6. We note that one meticulous firm, Adelman Lavine Gold and Levin, the Appellant in *Donut Shops,* regularly documents their photocopying costs with receipts. We shall not require documentation of this cost from all applicants. However, the practice of this firm exemplifies that such documentation is possible and it is always preferred and appreciated.

| Page | Entry Date | Change (if any & Reason) | Allowance (+) or Disallowance (−) | Cumulative Comparison |
|---|---|---|---|---|
| | | therefore specificity lacking (hereinafter referred to as "S"). | −2.0 | −2.0 |
| | 11/5 | D—S | − .7 | −2.7 |
| | 11/7 | NC—S | − .7 | −2.7 |
| | 11/11 | D all of time—S | −1.0 | −3.7 |
| | 11/11 | Allow at ½ rate (hereinafter "½ A.") | | |
| | | Non-specific conference | + .2 | −3.5 |
| | 11/15 | D all of time—S | − .6 | −4.1 |
| 3 | 11/21 | NC—not comprehensible entry, too general | — | −4.1 |
| | 11/21 | NC—S | — | −4.1 |
| | 11/27 | NC—too vague, attorney not identified | — | −4.1 |
| | 12/2 | NC—rather vague, allowed part of time | — | −4.1 |
| | 12/5 | A—will allow ½ time | +1.15 | −2.95 |
| | 12/26 | A—will allow entire mtg. per testimony at hrng. 1/7/87 | +1.0 | −1.95 |
| | 1/6 | A—will give ½ time | + .15 | −1.8 |
| | 1/8 | A " " " " | + .15 | −1.65 |
| | 1/14 | A " " " " | + .45 | −1.2 |
| 4 | 1/20 | D—S | − .4 | −1.6 |
| | 1/24 | NC—no reason to give time to call client if he is out of town | NC | −1.6 |
| 5 | 2/6 | A—will give ½ time | + .3 | −1.3 |
| | 2/17 (2 entries) | A—will give ½ time—although first entry vague—had allowed only .4 before | + .8 | − .5 |
| | 3/4 | NC—too vague | — | − .5 |
| | 3/6 | A—will give ½ time | + .15 | − .35 |
| 6 | 3/13 | D—Feaver is not client, unclear | − .2 | − .55 |
| | 3/18 | NC—time for court prep. excessive | NC | − .55 |
| | 3/20 | A—will give ½ time | + .35 | − .2 |
| 7 | 3/31 | D—S | − .4 | − .6 |
| | 3/31 | A—will give ½ time | + .25 | − .35 |
| | 4/1 | A—will give ½ time—doubtful | + .15 | − .2 |
| | 4/2 | D—excessive time for travel—disallow 1.5 | −1.5 | −1.7 |
| | 4/4 | A—will give ½ time | + .15 | −1.55 |
| 8 | 4/8 | D—S | − .3 | −1.85 |
| | 4/11 | A—will give ½ time | + .2 | −1.65 |
| | 4/14 | A " " " " | + .15 | −1.5 |
| | 4/15 | D—partial—very vague | − .5 | −2.0 |
| | 4/17 | A—will give ½ time | + .3 | −1.7 |
| 9 | 4/21 | A " " " " | + .2 | −1.5 |
| | 4/30 | NC—only reduced .7—appeared to be significant conf. | — | −1.5 |
| | | Brady change | −1.5 | −$187.50 |
| | | Hourly rate | | $125.00 |
| | | Adjustment | | −187.50 |

| Page | Entry Date | Change (if any & Reason) | Allowance (+) or Disallowance (−) | Cumulative Comparison |
|---|---|---|---|---|
| | | ROBERT SZWAJKOS, ESQUIRE | | |
| 10 | 11/7 | D—S | −1.5 | −1.5 |
| | 11/7 | D—S | −1.5 | −3.0 |
| | 11/8 | D—lumping—disallow half | − .5 | −3.5 |
| | 11/11 | NC—appears to be duplicate entry | — | −3.5 |
| 11 | 11/18 | D—S—attorney not identified | − .3 | −3.8 |
| 12 | 11/20 | A—will give ½ time | + .1 | −3.7 |
| | 11/21 | D—S—attorney not identified | − .2 | −3.9 |
| 13 | | No D, NC | | |
| 14 | 12/2 | A—will give entire time—had reduced 1.0 of 1.5 | +1.0 | −2.9 |
| 15 | 12/3 | D—will give only ½ time | − .1 | −3.0 |
| | 12/11 | A—will give ½ time | + .05 | −2.95 |
| | | ″ ″ ″ ″ | + .05 | −2.9 |
| 16 | 12/12 | A ″ ″ ″ ″ | + .1 | −2.8 |
| 17 | 12/19 | NC—too vague—attorney not identified | — | −2.8 |
| | 12/19 | NC—too much prep. time | — | −2.8 |
| | 12/27 | A—will give ½ time | + .15 | −2.65 |
| 18 | 12/31 | D—will only give ½ time | − .1 | −2.75 |
| | 1/3 | A—will give ½ time | + .1 | −2.65 |
| 19 | 1/6 | D—S | − .3 | −2.95 |
| | 1/6 | A—will give ½ time | + .15 | −2.8 |
| | 1/6 | D—½—lumping | − .15 | −2.95 |
| | 1/7 | NC—too vague—attorney not identified | — | −2.95 |
| 20 | 1/15 | NC—court personnel required keep conversation short | — | −2.95 |
| | 1/15 | A—will give ½ time | + .1 | −2.85 |
| | 1/16 | D—no indication who strategy session with | − .1 | −2.95 |
| | 1/22 | A—will give ½ time | + .55 | −2.4 |
| 21 | 1/22 | A ″ ″ ″ ″ | + .15 | −2.25 |
| 22 | 2/6 | D—S | − .4 | −2.65 |
| | 1/7 | A—(2 entries) will give ½ time | + .15 | −2.5 |
| 23 | — | No D, NC | | |
| 24 | — | ″ ″ ″ | | |
| 25 | 3/4 | NC—there is lumping, but this appeared significant, so NC | — | −2.5 |
| 26 | 3/5 | NC—Court personnel instructed to be brief | — | −2.5 |
| | 3/10 | A—will allow entire time | +1.0 | −1.5 |
| 27 | | No D, NC | | |
| 28 | 3/19 | NC—reduced .5 because comparable time for day appeared excessive (7.8 hours) | — | −1.5 |
| | 3/21 | A—will give ½ time | +.15 | −1.35 |
| 29 | 4/2 | NC—Court personnel instructed to be brief | — | −1.35 |
| | 4/4 | A—will give ½ time | + .15 | −1.2 |
| 30 | | No D, NC | | |

| Page | Entry Date | Change (if any & Reason) | Allowance (+) or Disallowance (−) | Cumulative Comparison |
|---|---|---|---|---|
| 31 | 4/28 | NC—too vague other attorney not identified | — | −1.2 |
| 32 | 4/28 | NC—court personnel instructed to be brief | — | −1.2 |
| | | Szwajkos change | −1.2 | |
| | | Hourly rate | $125.00 | |
| | | Adjustment | −150.00 | |

### DOUGLAS SPENCE, ESQUIRE

| Page | Entry Date | Change (if any & Reason) | Allowance (+) or Disallowance (−) | Cumulative Comparison |
|---|---|---|---|---|
| 33 | 11/19 | NC—only gave .3 because that is all Attorney Szwajkos, present at same meetings, requested | — | — |
| | 1/16 | A—will give ½ time | +.1 | + .1 |
| | 3/11 | A— " " " " | + .05 | + .15 |
| 34 | 3/11 | NC—lumping—cut to ½ | — | + .15 |
| | 3/12 | A—will give ½ time | + .05 | + .2 |
| | | Spence change | + .2 | |
| | | Hourly rate | $75.00 | |
| | | Adjustment | +15.00 | |

BI

### ELLEN CASEY, ESQUIRE

| Page | Entry Date | Change (if any & Reason) | Allowance (+) or Disallowance (−) | Cumulative Comparison |
|---|---|---|---|---|
| 36 | 11/20 | D—not clear why calling creditors—cut by ½ | −2.0 | −2.0 |
| | 11/20 | D—should take only a couple of minutes to draft | − .5 | −2.5 |
| | 11/21 | A—will give ½ time | + .15 | −2.35 |
| | | Casey change | −2.35 | |
| | | Hourly rate | $75.00 | |
| | | Adjustment | −176.25 | |

### PETER CILIO, ESQUIRE

| Page | Entry Date | Change (if any & Reason) | Allowance (+) or Disallowance (−) | Cumulative Comparison |
|---|---|---|---|---|
| 37 | 12/10 | NC—no specifics | — | — |
| | 12/27 | NC—too vague | — | — |
| | 12/31 | A—will give ½ time | + .2 | + .2 |
| 38 | 1/2 | A— " " " " | + .05 | + .25 |
| | 1/3 | A— " " " " | + .25 | + .5 |
| | 4/7 | A— " " " " (2 meetings) | + .15 | + .65 |
| | 4/8 | A—will give ½ time | + .05 | + .7 |
| 39 | 4/11 | A—will give ⅓ time | + .3 | +1.0 |
| | 4/14 | A— " " " " (4 meetings) | + .65 | +1.65 |
| 40 | 4/17 | D—too vague—what "order"? | − .2 | +1.45 |
| | 4/18 | A—will give ½ time | + .1 | +1.55 |
| | 4/24 | A— " " " " (2 meetings) | + .15 | +1.7 |
| 41 | 4/25 | A—will give ½ time | + .05 | +1.75 |
| | 4/28 | NC—S (both entries) | | |
| | | Cilio change | +1.75 | |
| | | Hourly rate | $90.00 | |
| | | Adjustment | +157.50 | |

Therefore, we are obliged to reduce the compensation for services to the Applicant by the net sum of $341.25 as follows:

| Attorney | Adjustment |
| --- | --- |
| Brady | −$187.50 |
| Szwajkos | − 150.00 |
| Spence | + 15.00 |
| Casey | − 176.25 |
| Cilio | + 157.50 |
| TOTAL | −$341.25 |

With respect to costs, we note that we originally disallowed a net sum of $504.09. While the entries for "xeroxing" on the Application would not be sufficient in themselves, under any circumstances, to justify an allowance, we note that, at the hearing on January 7, 1987, Mr. Rubin testified that the Applicant charges twenty ($.20) cents per page for in-house photocopying, which is the maximum we would allow. Although the requisite explanation of what was copies and why these copies were necessary is absent, since we are announcing our practices herein, we shall give the Applicant the benefit of all doubt, and allow it all of the "xeroxing" sought, on the assumption that it all represents photocopying at twenty ($.20) cents a page. We shall therefore allow the Applicant an additional $492.20 in costs.

On the other hand, we are not able to allow the other entries in addition to filing fees, the latter of which we had already allowed prior to the remand from the District Court in the amount of $320.00. These include "Petty Travel" of $4.70; "Postage" of $4.48; and "Bell Telephone" of $2.71. We would never allow any of these items without documentation and some particularized explanation of the need for such costs.

We therefore observe that the additional award to the Applicant, after the painstaking analysis requested by the District Court, is but $150.95, and the Applicant obtained a positive result only due to the cost issue, which was resolved in its favor by Orders of the District Court in other cases. This confirms our observation at the hearing on January 7, 1987, that we gave the benefit of every doubt to the Applicant in our original award because we were unaware of the substance of the case and that, if anything, we overlooked several matters which we should have disallowed in making our original award.

An Order consistent with this Opinion shall be entered.