**In re METRO TRANSPORTATION CO., t/a Yellow Cab Company, Debtor.**

**Bankruptcy No. 86–03618S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 29, 1987.

---

Mary F. Walrath, Douglas J. Smillie, Philadelphia, Pa., for Official Creditors' Committee.

Kevin W. Walsh, Philadelphia, Pa., for debtor.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

At 5:40 P.M. on August 6, 1987, the Applicant, CLARK, LADNER, FORTEN-BAUGH & YOUNG (hereinafter referred to as "Clark Ladner"), counsel for the Official Creditors' Committee in the above-entitled matter, filed a Motion asking that we reconsider our Order of July 27, 1987, awarding $43,061.75 compensation for services and $475.00 reimbursement for expenses to Clark Ladner. The Application was Clark Ladner's Second Interim Fee Application in this case, covering the period from December 1, 1986, to March 31, 1987, and it sought compensation of $54,083.50 for services and $1,596.02 for costs. Since this Motion was timely filed, just before the ten-day deadline for filing such motions, see In re Campfire Shop, Inc., 71 B.R. 521, 523–24 (Bankr.E.D.Pa.1987); and In re American International Airways, Inc., 69 B.R. 396, 396–97 n. 1 (Bankr.E.D. Pa.1987) (hereinafter referred to as "AIA II"), we reach its merits.

The matter was listed for a hearing by our Clerk's Office, in the ordinary course of its practice as to all Motions, on September 10, 1987, and continued at the request of Clark Ladner to September 16, 1987. We note that we may exercise our discretion not to conduct hearings on any fee applications. See Blum v. Witco Chemical Corp., 829 F.2d 367, 377–78, (3d Cir.1987); and In re Pettibone Corp., 74 B.R. 293, 300–01 (Bankr.N.D.Ill.1987). Moreover, this matter was presented on reconsideration and it was, like many such matters, presented in a non-adversarial context, see In re Shaffer-Gordon Associates, Inc., 68

B.R. 344, 351 (Bankr.E.D.Pa.1986), factors which, in the future, may cause us to cancel such hearings even when they are scheduled by the Clerk's Office. Nevertheless, here, we accorded Clark Ladner a hearing on this Motion.

Further, we note that we do not intend to write out detailed explanations of all or even very many of the disallowances which we make on fee applications, due to the intense volume of such matters. See In re Mayflower Associates, 78 B.R. 41, 44 n. 2 (Bankr.E.D.Pa.1987). Rather, we intend to carefully make all disallowances with check-marks on the Application. Id., at 43–44 & n. 2. We concede that, in this case, we did not mark the Application with marks for all of our disallowances. This is one reason that we have drafted this Memorandum by way of explanation of our disallowances.

■ Finally, we observe that we do not favor motions to reconsider fee applications, see In re National Paragon Corp. [II], 74 B.R. 858, 864 (Bankr.E.D.Pa.1987); American International Airways II, supra, 69 B.R. at 401–02; and In re National Paragon [I], 68 B.R. 337, 343 (Bankr.E.D. Pa.1986), rev'd, 76 B.R. 73 (E.D.Pa.1987). We agree with the statements of the court in Pettibone, supra, that reconsideration motions, particularly those relating to fee applications, "serve a limited application: to correct manifest errors of law or to present newly discovered evidence." 74 B.R. at 298.

Considering all of the foregoing, we have decided not to make any adjustments to our Order of July 27, 1987, and to deny Clark Ladner's Motion. However, at least in this instance, we shall briefly explain the bases for our deductions from the amount originally sought by Clark Ladner.

■ Many reductions were made for what we believe to have been excessive intra-office conference time. This is especially so because one very competent Clark Ladner partner, Mary F. Walrath, Esquire, handled virtually every court appearance in the case. Although there was a substantial body of proceedings in this matter, and

Ms. Walrath performed her duties with admirable tenacity and acumen, we nevertheless observe that most of the matters arising in this case in this period were not complex and none required an extensive hearing or a difficult legal issue. *Compare In re Metro Transportation, Inc.,* 64 B.R. 968 (Bankr.E.D.Pa.1986) (Resolution of difficult and complex issue of whether Debtor could continue to self-insure in light of state Public Utility Commission disapproval of its self-insurance plan occurring on September 29, 1986, prior to the pertinent period).

We do not mean to imply that Clark Ladner's intra-office conferences were useless. If we thought this, we would disallow all of the time requested for them. However, we fail to find the presence of such "extremely well-justified, extraordinary situations" as to cause us to allow full compensation to all participants in these frequent conferences. *See Mayflower, supra,* at 45–47; and *National Paragon II,* 74 B.R. at 839 & n. 1, 864–65. *See also Blum, supra,* at 378 (Court "troubled" by "hours claimed for consultation with other lawyers"). Thus, we generally allowed half-time for each of the conference participants in this Application, per our guidelines established in the foregoing cases.

We also note a few instances of "lumping" of different services, e.g., Douglas J. Smillie, Esquire, 12/9/86, 12/10/86, 1/29/87; Edward C. Toole, Jr., Esquire, 12/22/86, 1/27/87; and Ms. Walrath, 12/1/86, 1/13/87. This practice has been frequently disapproved not only by this Court, *see, e.g., In re Amatex Corp.,* 70 B.R. 624, 627–28 (Bankr.E.D.Pa.1985); and *In re Bible Deliverance Evangelistic Church,* 39 B.R. 768, 777–78 (Bankr.E.D. Pa.1984), but elsewhere, as in the Western District of Pennsylvania, where the practice is referred to as "clumping." *See In re Affinito & Son, Inc.,* 63 B.R. 495, 498–

99 (Bankr.W.D.Pa.1986). We have reduced, rather than striking entirely, "lumped" or "clumped" entries.

We also reduced the hourly rates requested by two of the attorneys who provided services, i.e., reducing the rate of former Chief Judge Emil F. Goldhaber to $200.00 hourly as opposed to a requested $275.00 hourly rate, and the requested rate of Mr. Toole from $190.00 hourly to $150.00 hourly. We believe that such adjustments are within our discretion to make. *See, e.g., Daggett v. Kimmelman,* 811 F.2d 793, 799–800 (3d Cir.1987); and *Shaffer-Gordon, supra,* 68 B.R. at 350–51. Our reasoning was that we were liberal in allowing a relatively steep $150.00 hourly rate to Ms. Walrath, a law graduate of only eight years and a practicing lawyer for only five years. She personally listed more than half of the hours claimed, and we note that the tasks performed by her were, for the most part, the more difficult tasks involving head-to-head advocacy in court in this case. We do not intend to deprecate the experience, learning, and contributions of either Mr. Toole, or, certainly, of our rightfully honored mentor, former Chief Judge Goldhaber. However, it is difficult to value the hours which either Mr. Toole or Judge Goldhaber spent in a consultive role at a higher rate than the liberal, yet, we believe, appropriate, rate requested by Ms. Walrath for her time, which included considerable efforts on the firing line in court. We do award a higher rate than that of Ms. Walrath to Judge Goldhaber, because we acknowledge his unique qualifications. However, the only tasks assigned to him here were conferences with Ms. Walrath and reviews of the work-products of other Clark Ladner attorneys.

Picking up on a cue from a subsequently withdrawn Objection to the Application in issue filed by First Fidelity Bank,[1] we also noted that Emily A. Interrante, a "Legal

---

1. We also observe that the Debtor also originally filed, but subsequently withdrew, Objections to Clark Ladner's Application. We have no doubt that we must carefully review fee applications even when no opposition persists or ever

has been raised thereto. *See In re J.A. & L.C. Brown Co.,* 75 B.R. 539, 539–40 (E.D.Pa.1987); and *Pettibone, supra,* 74 B.R. at 299–300 (In the latter case the court cut over half of fee requested despite absence of objections to application.).

Assistant" requesting an hourly rate of $60.00 per hour, spent all but about 25 of her 62.8 hours for which compensation was requested "classifying documents," "organizing documents," "organizing files," and "proofreading." These tasks appear to us to be largely secretarial work, and secretarial work is, we believe, non-compensable overhead. *See also Blum, supra,* at 378 slip op. at 21 (Court is "troubled" by "considerable amount of time charged to 'organization' and 'reorganization' of the file"). The fact that Ms. Interrante would be assigned such menial tasks also caused us to reduce her hourly rate to $50.00 per hour.

Except for a few, relatively modest other reductions (*e.g., inter alia,* we declined to compensate Susan L. Parsons, Esquire, for time spent on 1/20/87 attending a hearing *with* Ms. Walrath; we reduced the 8.8 hours expended by Mr. Smillie in responding to a rather innocuous motion for relief from the stay filed by Rosenthal and Rosenthal, for which the Debtor's counsel also claimed substantial time and which was ultimately settled), the foregoing constituted nearly all of our reductions for compensation for services. No new evidence was provided which we felt cast a different light on any of the relevant factors discussed above, despite Clark Ladner's being given a hearing on its instant Motion, and we note no manifest errors of law. Therefore, we decline to change our compensation figure.

Regarding the issue of expenses, we note that we gave Clark Ladner several opportunities to provide us with the detail to support same. After the initial hearing on July 15, 1987, we gave Clark Ladner an opportunity to supplement their original statement of expenses, which merely stated as follows:

| | |
|---|---:|
| Duplicating | $1,083.05 |
| Messenger Service | 50.73 |
| Special Postage | 74.83 |
| Telephone | 42.41 |
| Local Transportation | 265.98 |
| Telecopy | 14.00 |
| Lexis | 75.00 |
| TOTAL DISBURSEMENTS | $1,596.02 |

The Supplement explained that the designated cost of photocopying was twenty ($.20) cents per page, but the only additional pieces of information provided were general descriptions of circumstances in which the foregoing types of costs were imposed, without reference to any specific instances in this case where such circumstances rendered such costs appropriate here.

In our Order of July 27, 1987, we awarded Clark Ladner $75.00 for the "Lexis" costs, which we deemed reimburseable, and awarded it a compromise amount of $400.00 of the $1,255.04 balance of costs other than "Local Transportation," the latter of which we deemed to be non-reimburseable under any circumstances.

On September 16, 1987, at the hearing accorded to Clark Ladner on its Motion for reconsideration, Ms. Walrath testified that it was impossible to produce explanations of the specific instances in which such costs were imposed, because any raw records had been discarded at the time that the Application had been prepared. This is unfortunate, but we fail to see why we should change our "compromise" award on the basis of this explanation. We note that our initial inclination was to deny all of these costs, except perhaps the Lexis costs. *See National Paragon I, supra.*

The district court, in reversing *National Paragon I,* directed that we allow such costs under the conditions set forth in Judge King's decision in *In re American International Airways, Inc.* (hereinafter referred to as "*AIA I*"), 47 B.R. 716, 725 (Bankr.E.D.Pa.1985). In *Mayflower, supra,* at 47–48, 52, following Judge King's opinion in *AIA I,* we established prerequisites for allowances of items.[2]

---

**2.** At the hearing on September 16, 1987, Clark Ladner cited to *In re Frontier Airlines, Inc.,* 74 B.R. 973, 16 B.C.D. 107, 109 (D.Colo.1987), due to its critical swipe at the decision of Judge King in *Amatex, supra,* for purportedly imposing "slavish and overburdensome record-keeping requirements which, in the final analysis, result in fee applications of such enormous length and detail that they are of little ultimate

value to the Court in awarding fees." It is not at all clear to what particular aspect of the *Amatex* opinion this commentary is directed. Certainly, the requirements set forth in any of the opinions of Judge King or us do not approach those set forth in *In re S.T.N. Enterprises,* 70 B.R. 323, 832, 833, 842, 843, 844 (Bankr.D.Vt.1987), summarized in *National Paragon II,* 74 B.R. at 864.

We do not intend to allow such costs unless the prerequisites set forth by us in *Mayflower* and Judge King in *AIA I* are strictly adhered to, whatever the reason for the failure to adhere to them may be. The burden of establishing a right to compensation is always on the applicant. *See Mayflower, supra,* at 48; *Pettibone, supra,* 74 B.R. at 299. Although Clark Ladner may not have been able to have foreseen our decision in *Mayflower* a month later, they can scarcely plead the same basis for not adhering to the standards established in *AIA I* in 1985.

■ Restating these standards, we will generally allow certain costs, such as filing fees, costs for court and deposition transcripts, witness fees, and unusual or extraordinary expenses which are carefully documented, as per *National Paragon I, supra,* 68 B.R. at 341, without further requirements from applicants. However, other items of costs, which we opined in *National Paragon I* should be non-compensable overhead, will be allowed *only* if (1) Explanations as to the specific purpose of each of these items of costs are provided; and (2) (a) In the case of photocopying, the number of copies, the cost of copies, and reasons why photocopying was necessary are provided; and (b) In the case of all other items, including special postage, long-distance telephone calls, delivery services, travel (other than local travel which we will not allow in any event), telecopies, and Lexis charges, receipts as well as specific explanations of the reasons why the cost was necessary are provided.

Clark Ladner was unable to provide this information. We believe that we provided a dispensation, in light of the fact that our *Mayflower* Opinion was then unannounced, by granting it undocumented Lexis charges and granting it part of insufficiently documented other requested costs. In the future, no such dispensations will be granted. Our decision to allow such costs at a

$475.00 "compromise" figure in our July 27, 1987, Order seems to us, as it did then, totally just. In any event, we find little, if any, newly-discovered evidence and no manifest error of law in this award of costs.

We therefore are obliged to deny Clark Ladner's Motion for Reconsideration of our Order of July 27, 1987, in an accompanying Order.

---

The comments in *Frontier* might be explained by that court's having set up a separate "audit committee" of the Creditors' Committee in that case for the express purpose critically reviewing of the fee applications. *Id.* 74 B.R. 973, 16 B.C.D. at 108. In this way, the fee application procedure was introduced to the adversarial system, reducing the need for detailed fee applications. No such device was utilized here, and we would respectfully suggest that the rather abusive critique of our prodecessor in *Frontier* was misplaced.