**In re OLD SOUTH TRANSPORTATION COMPANY, INC., Debtor.**

**Bankruptcy No. 89–01763–APG.**

United States Bankruptcy Court,
M.D. Alabama.

Jan. 4, 1991.

E. Terry Brown, Montgomery, Ala., for Concord Commercial Corp.

Tom McGregor, trustee.

## OPINION ON FEE AWARD TO DEBTOR'S ATTORNEY

A. POPE GORDON, Bankruptcy Judge.

Old South Transportation Company, Inc., a trucking entity, filed a petition under chapter 11 on May 19, 1989.[1] On August 30, 1990, the case was converted to a case under chapter 7. During this fifteen-month period, a local attorney served as attorney for the debtor in possession.[2]

The debtor's attorney filed an application for compensation for services in the amount of $37,674.00, based on an hourly rate of $90.00, and for reimbursement of expenses in the amount of $3,856.01. The application chronologically[3] itemizes 418.6 hours of work for the period May 12, 1989 to August 17, 1990.

---

**1.** At the time the petition was filed, the trucking company had been engaged in interstate and intrastate hauling for eight years. It operated a fleet of 48 trucks and 62 trailers, employed 60 people, and served 85 customers.

**2.** On May 25, 1989, the debtor filed an application under 11 U.S.C. § 327 for approval of employment of the attorney. The court approved the employment, under a general retainer, on June 30, 1989.

**3.** This chronological listing extended for 45 pages and contained no groupings of related activities. *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988), reminds a fee applicant that "[a] well-prepared fee petition also would include a sum-

The debtor's attorney requests payment of his claim as a priority administrative expense[4] under 11 U.S.C. § 503(b).[5]

The debtor's attorney supported his application for compensation with his own affidavit and the affidavits of three other practicing attorneys.

Creditor Concord Commercial Corporation filed an objection with an opposing affidavit made by its attorney. Cecil W. Salter (president of the debtor corporation) and the bankruptcy administrator also filed objections.[6]

At the hearing on December 11, 1990, the parties submitted the matter on the record. No evidentiary hearing was requested.[7]

## I. Compensation for Services

### A. *General Principles*

Section 330(a)(1) provides that the court may award to a debtor's attorney—

reasonable compensation for actual, necessary services rendered ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title.

■ The debtor's attorney should be compensated only for those professional services which are beneficial to the estate economically or beneficial to the administration of the estate.[8] *Collier on Bankruptcy,* ¶ 330.05[2][d], at 330–41 (15th ed. 1979).

■ Courts begin the process of determining the dollar amount of compensation by multiplying the attorney's *reasonable* hourly rate by the number of hours *reasonably* expended, which produces the lodestar amount. Determination of the reasonableness of the attorney's rates and hours usually involves consideration of appropriate *Johnson* factors.[9] *Grant v.*

mary, grouping the time entries by the nature of the activity or stage of the case."

4. Section 503(b)(2) provides for the allowance as administrative expenses of claims for "compensation and reimbursement awarded under section 330(a) of [title 11]." Section 330(a) provides for compensation of attorneys employed under § 327 to represent or assist trustees in carrying out trustee duties. Under Bankruptcy Rule 9001(10), "trustee" includes "a debtor in possession in a chapter 11 case." Under § 1101(1), "debtor in possession" means debtor when, as here, no trustee has been appointed under § 1104.

5. This claim was incurred prior to conversion of this case to chapter 7 on August 30, 1990. It does not have priority over § 503(b) claims incurred *after* conversion. *See* 11 U.S.C. § 726(b).

6. The latter objections were not supported by affidavits.

7. There appears to be no factual dispute that the services were actually performed as recorded in the application. In such case, an evidentiary hearing is unnecessary. *Norman,* 836 F.2d at 1303–04.

8. In a chapter 11 case, a debtor's attorney owes it to himself and to his client to advise the client that the court may conclude that some of the services the client expects are unnecessary and therefore noncompensable from the estate.

9. The twelve factors listed in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), which is binding precedent in this court under *Bonner v. City of Prichard,* 661 F.2d 1206, 1210 (11th Cir.1981), are (1) the time and labor required, (2) the novelty and difficulty of the legal questions, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) experience, reputation and ability of the attorney, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Johnson,* 488 F.2d at 717–19.

Since *Johnson,* courts in the Fifth and Eleventh Circuits have used these factors almost exclusively as a guide, in both nonbankruptcy and bankruptcy cases. *See Matter of United States Golf Corp.,* 639 F.2d 1197 (5th Cir.1981). However, the application of these factors has been criticized by the Supreme Court as creating "theoretical" attorney's fees and, because of their subjectivity, as producing "disparate results" among the courts. *Norman,* 836 F.2d at 1298–99, *citing Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). The Eleventh Circuit, however, has suggested that these factors might be considered in terms of their influence on the lodestar amount, which according to *Pennsylvania v. Delaware,* includes all of the twelve

*Schumann Tire & Battery Co.*, 908 F.2d 874 (11th Cir.1990).

■ The lodestar amount may then be enhanced or reduced for cause, including contingency of the fee [10] and the results obtained. In reducing the lodestar amount for results obtained, "the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion." *See Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).

### B. *Attorney's Duties*

The attorney was employed under § 327(a) to "represent or assist the [debtor in possession *qua* trustee] in carrying out the trustee's duties."

The debtor in possession in the instant case was required to (1) file "as soon as practicable" a plan or to report to the court why no plan would be filed and recommend dismissal or conversion of the case; (2) file the required tax returns; (3) account for *estate property; (4) examine claims and* object to improper claims "if a purpose would be served"; (5) furnish information about the estate when requested; and (6) file the required periodic reports and summaries of business operations.[11]

### C. *Objections to Application for Compensation*

■ Concord Commercial Corporation objects that the claim for compensation is excessive. Specifically, the creditor argues that the attorney unnecessarily spent a substantial amount of time in opposing Concord's motion to require the debtor to assume or reject the lease between Concord and the debtor, which unnecessarily cost the estate $25,000 in administrative expense.

Cecil Salter, as president of the debtor corporation, was in close contact with the attorney throughout the fifteen-month period. He argues that the attorney was "ineffective" in negotiating with secured creditor attorneys to the detriment of the unsecured creditors.[12]

The bankruptcy administrator reported that the debtor sustained a $37,398.00 loss in income and a $289,820.00 depletion in assets during one year's operation under chapter 11. In addition, the debtor failed to file timely a disclosure statement, a proposed chapter 11 plan, and financial statements reflecting the debtor's operations. The bankruptcy administrator further reported that the debtor's attorney allowed the debtor to continue in chapter 11 when there was no longer any likelihood of a successful reorganization.

The bankruptcy administrator recommended that the fee be reduced based on the limited results obtained by the representation. He recommended an award of no more than the $4,000 retainer and $1,145 reimbursement for expenses already paid to the attorney.

---

factors, "except on rare occasions the factor of results obtained and, perhaps, enhancement for contingency." *See Norman*, 836 F.2d at 1299.

It is noteworthy that the majority of these factors are codified in § 330(a). *Collier on Bankruptcy*, ¶ 330.05[2][a], at 330–29 (15th ed. 1979).

**10.** Contingency of the fee in the instant case will not influence the enhancement factor, because this case is an asset case and the attorney has already been paid $5,145.

**11.** The trustee duties made applicable to the debtor in possession by 11 U.S.C. § 1107 appear in § 1106(a)(1), (5), (6), and (7) and § 704(2), (5), (7), (8), and (9).

**12.** Salter's other objections are without merit.

Salter asserts that under the debtor's attorney's fee arrangement the fee was set at $4,000, the amount of the retainer, plus expenses. The application he signed for the debtor to employ counsel, however, recites,

It is the desire of your Applicant to employ said attorney under *a general retainer to be applied against a total fee* based on the time, the nature, the extent, and the value of such services, *and the cost of comparable services* ... and to reimburse the attorney for his actual, necessary expenses (emphasis added).

Salter additionally argues that the attorney was inaccessible and rarely returned his telephone calls. However, the fee application shows that the attorney made numerous calls to Salter, almost daily, including the last day for which compensation is claimed.

The debtor's attorney, in reply to the bankruptcy administrator's report and recommendation, contends that the fee should not be reduced because of the failed reorganization. He argues that making fee awards contingent on successful reorganizations would discourage attorneys from representing chapter 11 debtors.

■ The court agrees that the failure should not be the *sole* reason for reducing compensation, but it is a factor that should be considered. *See In re James Contracting Group, Inc.*, 120 B.R. 868 (Bankr. N.D.Ohio 1990).

The objections of Concord, Salter, and the bankruptcy administrator have merit. The court will scrutinize the application for compensation in light of these arguments and reduce the number of hours by the unnecessary hours claimed, in consonance with § 330 and the *Norman* and *Grant* principles already enunciated.

### D. *Determination of Lodestar Amount*

#### (1) Reasonable Hourly Rate

■ The hourly rate of $90.00 requested by the attorney is supported by sufficient affidavits. The amount of the rate has not been challenged. The court concludes that this rate meets the *Norman* criteria[13] for reasonableness.

#### (2) Hours Reasonably Expended

##### (a) *Appeal of Concord Litigation*

■ Prior to filing the chapter 11 petition, the debtor leased from Concord Commercial Corporation 36 van trailers which it used in its trucking operation. These trailers constituted over one-third of the debtor's trailer fleet. The debtor contended that these trailers were irreplaceable and necessary to an effective reorganization.

The debtor failed in its attempts to pay the monthly installments under the lease after filing its petition.[14]

The court entered an order on December 12, 1989 requiring the debtor to assume or reject the Concord lease. The debtor appealed the court order, but the appeal was settled by the parties.

The trailers were repossessed by Concord March 15, 1990 after the unsuccessful efforts of the debtor to assume the lease.

The attorney listed 68.4 hours from December 19, 1989 to February 16, 1990 representing work on matters connected with the appeal of the December 12, 1989 order requiring the debtor to assume or reject the lease with Concord. This work began at a time when the attorney knew, or should have known, that the debtor was financially unable to assume the lease.[15]

The hours expended in pursuing the appeal were unnecessary; the work was counterproductive and the results costly to the estate. These hours will be deducted from the total hours claimed. *See* Appendix A.

##### (b) *Five Disclosure Statements*

■ The court order of May 24, 1989 required the debtor to file a plan accompanied by a disclosure statement by September 16, 1989.[16] The plan and disclosure

---

**13.** According to the supporting affidavits filed by the debtor's attorney, the hourly rate of $90 reflects the prevailing market rate for the work done. Among other *Johnson* factors, the novelty and difficulty of the questions presented by this case and the skill requisite to perform the legal services properly have been considered.

**14.** The last monthly payment the debtor made to Concord was by check in February 1990 for the month of December 1989, after one other check had been returned for lack of sufficient funds.

**15.** The debtor had argued that the lease was actually a security agreement. However, the debtor had no more financial means to bring the *lease* current than to pay adequate protection payments to Concord as a *lien creditor*. *See supra,* note 14. Based on the debtor's contention that Concord was oversecured, adequate protection payments to Concord would have been in the same amount as the lease payments. *See* 11 U.S.C. § 506(b). Therefore, the outcome of the appeal was irrelevant.

**16.** The order required the debtor to file any request for an extension of time to comply with the court order at least five days *before* the deadline. One month *after* the deadline the attorney filed a request for an extension in which he stated that he "inadvertently misread the Court's order of May 24, 1989, as granting the Debtor a 120 day exclusive period for filing a Plan and Disclosure Statement."

statement were not filed until October 24, 1989, about one month after the bankruptcy administrator filed a report recommending that the case be dismissed or converted to chapter 7 because of failure to file these documents timely.

The disclosure statement, when finally filed, did not provide creditors with "adequate information" as that term is defined in 11 U.S.C. § 1125(a)(1). It failed to furnish the amounts necessary to fund the proposed plan. Thereafter, during the six-month period from December 12, 1989 to June 25, 1990, the attorney amended the disclosure statement four times to correct errors.

The amended statements contained information which was at the time known, or should have been known, by the attorney or the officers of the debtor corporation to be inadequate, incorrect, and even misleading.[17] Whether this happened by design, carelessness or inexperience need not be decided here. It is sufficient to caution the attorney that, as an officer of the court, he has a duty not to file documents of this character. *See* Bankruptcy Rule 9011. The 42.1 hours reportedly spent on the disclosure statements will be deducted. *See* Appendix B.

### (3) Calculating the Lodestar Amount

The hourly rate of $90.00 multiplied by the 308.1 hours remaining after deduction of the 68.4 Concord hours and the 42.1 disclosure statement hours from the 418.6 hours claimed, is $27,729.00—the lodestar amount.

### (4) Factors in Adjusting the Lodestar Amount

■ The court concludes that the lodestar amount is excessive based on the ineffectiveness of the debtor's counsel as described above.

A substantial portion of the services rendered by the attorney (1) did not benefit the estate economically and (2) did not benefit administration of the estate.

### (a) *Economic Results*

Economic loss to this estate began when the debtor sustained an operating loss of $70,999.95 in June 1989. In September 1989 gasoline prices increased dramatically, contributing in part to the operating loss of $38,658 for that month.

From December 1989 to August 1990 the debtor was unable to furnish required adequate protection on a regular basis to at least two major creditors, Concord Commercial Corporation and Paccar Financial Corporation.[18] These creditors held liens on trucks and trailers necessary for the debtor's reorganization. In March 1990 Concord repossessed over one-third of the debtor's trailers then in use.

During the 15–month period from June 1989 to August 1990, the debtor sustained a diminution in assets of at least $289,800. In addition, the estate incurred a $25,000 priority administrative expense claim by delaying release of the Concord trailers for two and one-half months while unsuccess-

---

**17.** Violations of disclosure requirements occurred in every statement filed. They included failure to disclose pending litigation with Concord (including the appeal); failure to disclose the debtor's financial inability to post an appeal bond; failure to disclose repossession of one-third of the debtor's van trailers by Concord which the debtor contended were irreplaceable and necessary to an effective reorganization; listing as an $800,000 asset litigation against a creditor without disclosing that the creditor was in chapter 11; listing as an asset of the debtor corporation real estate owned by the principal stockholder; failure to disclose a $25,000 priority administrative expense claim against the debtor; representing that postpetition federal employment taxes (Form 941 taxes) had been paid without disclosing the $35,000 claim of Internal Revenue Service for these taxes; listing as a debt of the debtor corporation a $117,614

debt owed solely by the principal stockholder and another party; failure to disclose completely operating losses suffered by the debtor; and failure to disclose possible preferential payments made by the debtor to the principal stockholder.

**18.** Some 112 contacts with Paccar were recorded in the attorney's application for compensation, many of which appear to involve nonprofessional work on such matters as renewal of insurance policies, vehicle inspections, and the indebtedness balance. The other contacts largely regard late payment of installments on 32 trucks and efforts to prevent the trucks' repossession. Many of the hours are excessive but these hours cannot be isolated with certainty from the fee application.

fully attempting assumption of the Concord lease without the financial means to do so.

The attorney allowed [19] the debtor to remain in chapter 11 until August 30, 1990—many months after there was obviously no likelihood of effective reorganization.

U.S. Bankruptcy Judge A. Thomas Small explains the detriment to the estate and the prejudice to creditors resulting from such unnecessary delay: [20]

> ... Inessential delay frustrates creditors, exasperates debtors, and burdens an already overburdened bankruptcy system. Inevitably, complex chapter 11 cases take time, but less complicated reorganizations should not ...
>
> To a creditor waiting for payment, time is money. Unsecured creditors are not paid interest on their claims and the longer they wait for distribution, the greater is their loss. Undersecured creditors likewise do not get interest on their secured claims and, in addition, are not entitled to recoup their "lost opportunity costs" while the debtor reorganizes. *United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd.,* [484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740] (1988) ...
>
> ... There may be circumstances in which it is advantageous to the debtor to delay confirmation of a plan, but in the typical case the debtor derives no benefit from a delay in confirmation. After all, a stalled reorganization extends the court's control of the debtor's affairs, increases the possibility of litigation, multiplies the debtor's costs, and continues the bankruptcy stigma.
>
> ... [C]hapter 11 cases that languish unresolved for no apparent reason impair the efficiency of the bankruptcy system. An extended confirmation period means more reports for the U.S. Trustee or Bankruptcy Administrator to examine, more paperwork for the clerk to record and monitor, and more litigation for the court.

### (b) *Administrative Results*

■■■ An attorney for a debtor in possession, as an officer of the court, has a duty to notify the bankruptcy administrator and the court whenever it becomes evident that a reorganization is unlikely to succeed. *In re James Contracting Group, Inc.,* 120 B.R. 868 (Bankr.N.D.Ohio 1990); *see In re Blue Top Family Restaurant, Inc.,* 110 B.R. 777, 777 (Bankr.W.D.Pa.1990):

> Counsel filing cases in this court on behalf of debtors, in order to obtain the relief and protection accorded by the Bankruptcy Code, stand in a fiduciary relation to their clients, the prepetition creditors and the postpetition creditors; inflicting further damage on those parties is a violation of that fiduciary duty.

In this case it should have become evident to the attorney by December 1989, and certainly no later than March 1990 when the Concord repossession took place, that reorganization would not succeed.

The attorney, however, while exhibiting little regard for provisions of the Bankruptcy Code, Bankruptcy Rules, and court orders, delayed the ultimate conversion of this case. He filed the plan and disclosure statement five weeks after the filing date fixed by the court. Weeks of further delay occurred from correcting the plan and disclosure statements and from failure to make service of these documents on creditors within the time required by court order. Nine months elapsed between filing of the first plan [21] and disclosure statement

---

**19.** There is no evidence that the debtor sought to remain in chapter 11 against the advice of its attorney.

**20.** This quote is excerpted from an unpublished paper given by Judge Small at a workshop for bankruptcy judges of the 8th, 9th and 10th Circuits, at Phoenix, Arizona, during December 4 to 6, 1989.

**21.** Altogether, three plans were filed. They all proposed essentially the same method of reorga-

nization: (1) payment of priority administrative and tax claims first; (2) payment of secured claims in full, according to the terms of the security agreements, with payment of arrearage to be postponed until the end of the terms of the agreements; (3) payment of unsecured claims in full over a nine-year period without interest; and (4) payment of insider claims after payment of unsecured claims.

None of the plans gained acceptance by the creditors. Financial reports and operating loss-

and the final confirmation hearing—which is at least six months too long for a case no more complex than this.

In addition to the late plan filing, the attorney did not file the first financial report[22] on time or seek an extension of time for cause, as permitted by court order. Further delay occurred following reminders by the bankruptcy administrator. It then became necessary to issue show cause orders and conduct hearings—which resulted in unnecessary litigation and delay.

(5) Reducing the Lodestar Amount

Because specific hours leading to these results cannot be identified with certainty in the application for compensation,[23] the court concludes that the lodestar should be reduced by applying a proportionate factor of 0.5 to the lodestar amount of $27,729.00, which will result in a nonexcessive fee award of $13,864.50.

## II. Reimbursement of Expenses

 The attorney applied for reimbursement of expenses in the amount of $3,856.01. Of this amount, $1,882.50 is claimed for photocopying. The application fails to show the number of copies made, the identity of the documents copied, the actual cost per copy to the attorney, and whether photocopying was the least expensive method of reproducing the documents. This amount will be disallowed.

A showing of actual and necessary costs must be provided in sufficient detail to substantiate the actual and necessary nature of expenditures.[24] *Collier on Bankruptcy,* ¶ 330.06[3], at note 6b, (15th ed. 1979) (*quoting In re Motor Freight Express,* 80 B.R. 44 (Bankr.E.D.Pa.1987)) ("In the case of photocopying, counsel should inform the Court of the number of copies, the cost of each copy, and provide, if possible, a breakdown of the reasons why photocopying of certain documents was necessary.")

Reimbursement of the other expenses claimed can be substantiated from the fee application and will be allowed in the amount of $1,973.51.

## III. Conclusion

The fee award of $13,864.50 and reimbursement of expenses of $1,973.51 totals $15,838.01, of which $5,145.00 has been paid. The balance of $10,693.01 will be allowed as a priority administrative expense claim subject to the provisions of 11 U.S.C. § 726(b).[25]

An appropriate order will enter separately.

## APPENDIX A

### Concord Hours

| Date | Time | Services |
| --- | --- | --- |
| 12/19/90 | | |
| | .6 | Draft Designation of Record on Appeal |
| | .3 | Telephone w/ client; RE: Bond |

es while in chapter 11 showed that the debtor lacked sufficient funds to carry out the plan. In fact, the debtor would have been financially unable to pay the priority administrative and tax claims on the effective date of a confirmed plan as required. *See* 11 U.S.C. § 1129(a)(9).

**22.** Prompt and regular filing of financial reports by the debtor is vital. This is the chief means the bankruptcy administrator employs in carrying out his statutory duty of supervising bankruptcy estates. *See* § 302(d)(3)(I), Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986. The information in the reports is used to detect possible diminution of estate assets and to determine ability to effectuate or consummate a plan.

**23.** This is true even though the application for compensation contains a detailed statement as to the services rendered, including the general subject matter of each activity, and the amount of time expended, as required by Bankruptcy Rule 2016.

**24.** Section 330(a)(2) provides that the court may award to a debtor's attorney "reimbursement for actual, necessary expenses."

**25.** *See supra* note 5.

| Date | Time | Services |
|------|------|----------|
| | .3 | Draft issues presented on appeal |
| | .2 | Review Motion for Stay of Court Order |
| 12/20/89 | .3 | Draft Notice of Appeal |
| | .6 | Draft Motion to Stay Court Order |
| 12/21/89 | .2 | Review Notice of Appeal; Motion to Stay Ct. Order |
| | .2 | Telephone w/ client; RE: Concord |
| 12/26/89 | 1.2 | Legal Research—Appeal |
| 1/02/90 | .1 | Telephone w/ law clerk; RE: Hearing on Bond |
| | .2 | Telephone w/ Client; RE: Bond |
| | .1 | Telephone w/ law clerk; RE: Extension of Stay |
| | .2 | Draft Notice of Intent to Offer Oral Testimony |
| 1/02/90 | .5 | Telephone call to bonding companies |
| 1/04/90 | 2.4 | Legal Research |
| 1/04/90 | .3 | Read response to Debtor's Mtn. for Stay |
| 1/05/90 | .2 | Telephone w/ client; RE: Ability to meet bond |
| | 1.1 | Draft Memorandum Brief in Support of Mtn. for Stay |
| 1/06/90 | 6.7 | Draft Memorandum Brief in Support of Mtn. for Stay |
| | 2.1 | Legal Research |
| 1/07/90 | 5.9 | Draft Memorandum Brief |
| 1/08/90 | 2.6 | Draft Memorandum Brief |
| | 3.1 | Legal research |
| | 2.1 | Conference w/ client; RE: Hearing on Mtn. for Stay |
| | 2.8 | Revise Memorandum Brief |
| 1/09/90 | .8 | Revise Brief |
| | .6 | Conference w/ client; RE: Hearing—testimony/evidence |
| | 1.7 | Court Hearing—RE: Mtn. for Stay |
| | .2 | Telephone w/ client; RE: Court's decision |
| 1/10/90 | .2 | Telephone w/ client; RE: Bond |
| 1/10/90 | .1 | Telephone w/ Brown's secretary; RE: message |
| 1/12/90 | .3 | Read Letters from Brown; RE: Appeal |
| 1/12/90 | .3 | Telephone w/ client; RE: Bond |
| | .4 | Telephone w/ Client; RE: Bond |
| 1/12/90 | 1.1 | Telephone call to bonding companies; RE: Appeal bond |
| 1/15/90 | .8 | Legal Research |
| 1/16/90 | 1.6 | Legal Research |
| | .3 | Draft letter to Judge |
| | 2.8 | Draft Motion for Reconsideration |
| | .7 | Draft Proposed Order |
| 1/17/90 | .1 | Read letter to Judge; RE: Concord's Response |
| 1/17/90 | .1 | Telephone w/ Judge's Sec.; RE: Ext. of Stay |
| | .1 | Telephone w/ law clerk; RE: Extension of Stay |
| 1/22/90 | .2 | Conference w/ Judge's Sec.; RE: Order |
| | .2 | Telephone w/ client; RE: Extension of Stay |
| | .1 | Telephone w/Judge's Sec.; RE: Ext. of Stay |
| 1/23/90 | .3 | Prepare for Hearing on Stay |
| | 1.6 | Court Hearing on Stay Pending Appeal |
| 1/25/90 | 1.5 | Legal Research |
| 1/29/90 | .2 | Read Court Orders |
| 1/29/90 | .6 | Review File to draft Emergency Motion |
| 1/30/90 | 2.6 | Draft Emergency Motion for Review in District Ct. |
| 1/30/90 | .3 | Telephone w/ client; RE: Fin. ability to meet bond |
| 1/31/90 | 2.8 | Review Emergency Motion |
| | .3 | Telephone / client; RE: Meeting bonds |
| 2/01/90 | .2 | Telephone / court reporter; RE: Transcripts |
| | .1 | Telephone w/ Judge Thompson's Law clerk; RE: Hearing |
| | .1 | Telephone w/ Court reporter |
| | .2 | Telephone w/ client; RE: Hearing |
| 2/02/90 | .4 | Telephone w/ client; RE: Offer to Settle |
| | .3 | Telephone w/ client; RE: Offer to Settle Appeal |
| 2/01/90 | .2 | Telephone w/ Brown; RE: Hearing |
| | .1 | Telephone w/ law clerk; RE: Hearing |

| Date | Time | Services |
|------|------|----------|
| 2/02/90 | .4 | Telephone w/ Brown & Lloyd; RE: Offer to Settle Appeal |
| | .3 | Telephone w/ Brown; RE: Offer to Settle Appeal |
| | .4 | Telephone w/ Brown; RE: Settlement of Appeal |
| | .2 | Telephone w/ law clerk; RE: Settlement of Appeal |
| | .1 | Telephone w/ court reporter; RE: Transcripts of HEarings |
| | .1 | Read Notice from Clerk, District Ct. |
| | .1 | Read letter and clerk's certificate |
| 2/05/90 | .3 | Telephone w. client; RE: Checks to Concord |
| | .6 | Revise Proposed Ct. Order & Mtn. to Dismiss Appeal |
| | .2 | Draft letter to client; RE: Concord Settlement |
| 2/05/90 | .3 | Telephone w/ Brown; RE: Debtor's Cks. to Concord |
| | .3 | Telephone w/ client; RE: Cks. to Concord |
| 2/07/90 | .3 | Telephone w/ Brown; RE: Debtor's NSF cks. |
| 2/07/90 | .1 | Read Court Order |
| 2/09/90 | .2 | Telephone w/ Brown; RE: Concord trailers |
| | .2 | Telephone w/ Brown; RE: Concord trailers |
| | .2 | Telephone w/ Brown; RE: NSF cks. |
| | .2 | Review court order |
| | .2 | Telephone w/ client; RE: Assembly of Concord Trailers |
| 2/12/90 | .2 | Telephone w/ client; RE: Options w/ regard to Concord |
| | .2 | Read Concord's Objection to Amended Disclosure Stmt. |
| | .3 | Telephone w/ Brown & Lloyd; RE: Concord |
| 2/12/90 | .2 | Telephone w/ Brown; RE: Concord trailers |
| | .3 | Draft letter to Brown; RE: Concord |
| | .1 | Telephone w/ Brown; RE: Assembly of trailers |
| 2/13/90 | .2 | Telephone w/ Brown; RE: Concord trailers |
| | .3 | Conference w/ client; RE: Preparation for Hearing |
| | .9 | Court Hearing |
| 2/14/90 | 1.1 | Court Hearing |
| | .2 | Telephone w/ Client; RE: Court's Decision, Bk. Recs. |
| 2/15/90 | .1 | Telephone w/ client; RE: NSF check to Concord |
| 2/15/90 | .2 | Telephone w/ Brown; RE: Settlement Discussion |
| 2/16/90 | .2 | Telephone w/ Brown; RE: Bank Records |
| 2/16/90 | .3 | Telephone w/ client; RE: NSF cks. & Bk. Records |
| | .1 | Telephone w/ Judge's Sec.; RE: Additional Hearing |
| | 68.4 | **Total Concord Hours** |

## APPENDIX B

### Disclosure Statement Hours

| Date | Time | Services |
|------|------|----------|
| 9/15/89 | .8 | Review Disclosure Stmt. |
| 9/18/89 | 1.6 | Revise Disclosure Stmt. |
| 10/22/89 | 4.2 | Revise Disclosure Stmt. |
| 10/23/89 | 1.2 | Revise Disclosure Stmt. |
| 11/22/89 | .4 | Revise Disclosure Statement |
| 11/28/89 | 1.3 | Court Hearing on Disclosure Stmt. |
| 12/11/89 | .6 | Revise Disclosure Stmt. |
| 12/12/89 | 1.2 | Revise Disclosure Stmt. |
| 12/14/89 | .2 | Telephone w/ B.A.; RE: Amended Disclosure Stmt. |
| 12/28/89 | .2 | Telephone w/ B.A.; RE: Amended Disclosure Stmt. |
| 12/29/89 | .6 | Revise Disclosure Stmt. |
| 2/13/90 | .3 | Review Disclosure Stmt. |
| 4/09/90 | .6 | Amend Disclosure Stmt. & Plan of Reorganization |
| 4/28/90 | .4 | Revise Amended Disclosure stmt. & Plan |
| 6/14/90 | 3.7 | Financial data into Disclosure Stmt. and Plan |
| 6/18/90 | 1.6 | Revise projection |
| | 4.6 | Review Disclosure Stmt. |

| Date | Time | Services |
|------|------|----------|
| | .6 | Revise projections |
| | 1.7 | Revise Disclosure stmt. |
| 6/19/90 | 1.7 | Proofread and Revise Disclosure Stmt. |
| | .6 | Proofread and revise Projections |
| | .5 | Proofread and revise Disclosure stmt. |
| 6/20/90 | .7 | Revise Disclosure Stmt. |
| | 3.8 | Revise Disclosure Stmt. |
| 6/21/90 | .5 | Proofread Disclosure Stmt. |
| | 4.1 | Revise Disclosure Stmt. |
| 6/24/90 | 2.8 | Revise Disclosure Stmt. |
| 6/25/90 | 1.6 | Revise Disclosure Stmt. |
| | 42.1 | **Total Disclosure Statement Hours** |